Brewster
v.
Countryman.

## BREWSTER *vs.* COUNTRYMAN.

*Parol evidence* of an agreement to indemnify and save harmless a purchaser
of personal property is admissible, although the agreement in respect to
the sale is reduced to writing and contains no such stipulation, if the *parol
agreement* be made *subsequent* to the execution of the *written agreement.*

Secondary evidence, in proof of written instruments shown to be destroyed,
is admissible, if it appe rs that better evidence than what is produced is
within the power of the party; thus where a *copy* was taken of an agree-
ment, and the party, instead of producing the copyist or accounting for his
absence, proved his hand-writing, it was held that the evidence was insuffi-
cient to authorize the admission of the copy.

Where a vendor, required to give a written indemnity against any claims
that might be made upon the property sold, refused to do so, but told the
purchaser " that he would see him out in it, *it was held* that these expres-
sions were equivalent to an agreement to indemnify.

A *vendor* of personal property, who has notice of a suit against his vendee in
respect to the property sold, is as much bound to indemnify his vendee as
if he had entered into an express covenant for that purpose.

A purchaser who defends in a justice's court against a claim made upon
the property sold to him, is not bound to carry up the cause by appeal, if
judgment passes against him.

ERROR from the Herkimer common pleas. Countryman
sued Brewster in a justice's court, and declared for a quantity
of oats, spring wheat, corn, and winter grain, growing on
premises lately occupied by B. Fairchild, sold by the defend-
ant to the plaintiff, and for the breach of an agreement,
whereby the defendant had engaged that if the plaintiff should
be put to any costs in consequence of such sale, he would pay
all the damages and costs; to which declaration the defend-
ant pleaded the general issue. The cause was tried before
the justice, who gave judgment for the plaintiff for $50 dam-
ages. The defendant appealed to the Herkimer C. P.; on the
trial in which court the following facts appeared: In the
spring of 1826 the plaintiff entered into possession of a farm
under one Benjamin Fairchild, and put in spring crops on
shares. Shortly after which the defendant, as landlord of the
premises, threatened to turn the plaintiff out of possession, al-
leging that Fairchild had forfeited his lease, unless the plain-
tiff would secure him $160 or $170, which he claimed to be

due to him as arrearages of rent: and if the plaintiff would secure him such arrearages, he would sell him all the crops in the ground, and give him a lease of the place at the rent of $38 per annum. An agreement was accordingly entered into, which was reduced to writing and signed by the parties. *After* the execution of the agreement, and on its being read, the plaintiff observed, "I want a written indemnity against all claims upon the grain;" to which the defendant answered that he would not give him a written indemnity, that he sold him the whole, that it belonged to him, and that *he would see him out in it;* that if he was sued, he must take the legal steps of the law in defending himself. The defendant called for the production of the written agreement. The plaintiff proved its destruction by the defendant himself. The defendant then offered in evidence what he alleged to be a copy of the agreement, and proved that the plaintiff had requested one Joseph Hunt to make a copy of the agreement; that the paper now produced was in the hand-writing of Hunt; and one witness testified that it was *in substance* like the original, which he had frequently seen, but he could not say it was a copy, as he had not compared it with the original. Joseph Hunt was not produced as a witness, nor was his absence accounted for; the court refused to receive the alleged copy in evidence. The plaintiff then proved the recovery of a judgment against him, in favor of one *Elias Fairchild,* in a justice's court, for $49 damages and $4,38 cts. costs, in an action of trover for the one half of the hay, grain oats, &c. raised on the farm formerly occupied by *Benjamin Fairchild,* and that on the trial of that cause, *Elias Fairchild* claimed to recover under an assignment executed to him by *Benjamin Fairchild.* It was further proved that *Brewster,* the now defendant, was examined as a witness on that trial, and testified that Benjamin Fairchild had assigned his lease to him, the witness, and that he had put Countryman into possession of the premises. Countryman appealed from the judgment so rendered against him, and obtained a verdict in the common pleas; but subsequently the appeal and all proceedings had thereon were *quashed* for a variance between the judgment and appeal bond. The proof of the judgment in favor of Fair-

child against Countryman was objected to by Brewster as in-admissible, but the objection was overruled. The judgment in favor of Fairchild was paid by Countryman, who also paid costs and expenses in the appeal suit, to the amount of $52,-40. The common pleas charged the jury, that if they believed that the defendant had agreed to indemnify the plaintiff in reference to the sale of the crops, &c. the plaintiff would be entitled to their verdict for all damages and costs growing out of the transaction incurred by him; that if they were not satisfied that the defendant had entered into such agreement, then, to entitle the plaintiff to a verdict, it was incumbent upon him not only to prove the damage sustained by him, but also that the defendant, at the time of the sale, was not the owner of the property sold. To which charge the defendant's counsel excepted, and prayed the court to instruct the jury that the expressions used by the defendant, "that he would see the plaintiff out in it," made at the *same time* that he refused to give an indemnity, were not in point of law an agreement to indemnify or save harmless; and also that the judgment of Fairchild against the plaintiff had no connection with this suit; that it was illegal on its face, and if the defendant was bound to indemnify the plaintiff, he could not be called upon to pay judgments illegally obtained. The jury found a verdict for the plaintiff for $132, on which judgment was entered. The defendant sued out a writ of error.

*J. B. Hunt,* for plaintiff in error.

*F. J. Littlejohn,* for defendant in error.

*By the, Court* SAVAGE, Ch, J. There were but three questions raised below to the decision of which exceptions were taken: 1. Whether the paper alleged to be a copy of the agreement should not have been received in evidence; 2. Whether the court chargedt he jury correctly; 3. Whether they should not have charged as requested by the defendant's counsel.

As to the paper purporting to be a copy of the agreement, the best evidence was not produced. The plaintiff had re-

quested Joseph Hunt to make a copy, and the paper produced purported to be a copy, and was in Hunt's hand-writing; and the witness who had seen the original, said it was substantially the same. This was pretty strong testimony, yet Joseph Hunt's testimony would be stronger; Joseph Hunt was not produced, nor was his absence accounted for. The evidence produced showed that there was better evidence in the power of the defendant, not produced. That is the very case in which secondary evidence should not be received as sufficient. The court was correct in this decision. I do not consider it very important in this case, for the plaintiff's witness testified that there was no written agreement to indemnify; that the defendant refused to insert such agreement in the writing. The case stands therefore precisely as it would have done had the copy been introduced showing that fact; and that, I understand, was the only object of introducing the copy.

The defendant says, " I will not give you a written indemnity, but I have sold you the property; it is yours, and *I will see you out with it.* " Assuming that these last words are synonymous with " I will indemnify you, " or " save you harmless," then the transaction is simply this : When the plaintiff asks for a written indemnity, the defendant says, " I will not indemnify you in writing, but I agree by parol that I will save you harmless. " A *parol* agreement to indemnify in such a case is as valid as a written one ; and no inference can be drawn from the fact that no such agreement was contained in the writing. Had nothing been said on the subject *at the time,* and previous conversations only had been relied on, then the rule would apply, that where parties commit their contract to writing, the presumption is that the whole which was deemed material was written, and what was not written was not intended to constitute a part of the contract; but in this case there is no room for such presumption, for after the writing was drawn and probably executed, the defendant says, I will save you harmless. This was no more than the law imposes upon him so far as concerned the title, provided he had due notice of any claim affecting the title. It was a valid

Brewster
v.
Countryman.

agreement and founded upon sufficient consideration, and did not contradict or vary the written agreement.

The charge of the court was substantially this ; that if there was an agreement to indemnify, then the defendant was liable at all events, and the jury need not inquire into the question of title ; but if there was no special agreement to indemnify, then they must be satisfied that the defendant had no title to the property when he assumed to sell it. In relation to the facts of the case, the law was, I think, correctly stated ; but still, I see little or no difference between the two positions. In the first case, no evidence of title out of the defendant need be produced as such, but the plaintiff must show that the property was taken from him by due process of law, or by paramount title ; and in the latter case, a recovery by due process of law, with due notice of the prosecution to the defendant to enable him to defend, is evidence of want of title, if the claim originated anterior to the sale by the defendant. If there is any distinction, it is unnecessary to discuss it ; for, by the evidence before the court, it appears that the question of the defendant's title under the assignment, was the important question. E. Fairchild, the plaintiff in that suit, claimed also under an assignment from B. Fairchild. The only question, therefore, contested before that court was, which had the better title derived from B. Fairchild. It appears that the defendant in this suit in the court below (the plaintiff in error) was a witness in the cause of E. Fairchild against Countryman. He had notice therefore of the claim, and was bound to sustain his title, whether he specially agreed to indemnify or not. I assume that Brewster had due notice of E. Fairchild's suit, for no objection was raised of the want of notice ; and it appears that he had actual notice, from the fact of his being a witness on the trial. It is argued by the plaintiff's counsel that this fact shows that Brewster was not then considered as interested ; but that does not follow. It shows that a witness was in fact sworn in the cause who, by his own testimony, showed that he was the party in interest, unless he had been released ; and if released, that would have been a good defence in this suit. That fact, therefore, merely shows, that in the suit brought by E. Fairchild, Brewster

had a chance to defend his title by his own oath; of that he cannot complain.

I do not think it necessary to inquire whether Countryman lost his claim, by the mistake in the proceedings, in consequence of which the appeal was quashed. There was no exception taken which raises that question distinctly to the court; but there can be no doubt, that where the vendee is prosecuted by a third person for property claimed by a title superior to the title of the vendor, if the vendee gives the vendor notice of the prosecution, he is not bound to appeal to a higher tribunal, even if he is not bound to defend at all.

If I am right in supposing that the charge of the court below was substantially correct, it follows that they were correct in refusing to charge, as requested by the defendant's counsel. That the words, " see him out with it," in the connection in which they stand, can mean nothing else than to indemnify or save harmless, seems to me quite clear; if it was a cant phrase or provincialism, meaning something else, evidence should have been offered to prove it, but then the matter must have been submitted to the jury. The court could not have correctly charged the jury that the suit brought by E. Fairchild had no connection with the case on trial; it was extremely important to make out the plaintiff's case.

I am therefore of opinion that the judgment of the Herkimer common pleas ought to be affirmed.