[No. 3813.   Decided April 20, 1901.]

JOSEPH W. SACKMAN et al., Respondents, v. CHARLES L. THOMAS, Appellant.

REQUESTED FINDINGS — INCONSISTENCY.

The rule which declares it error for the court to make inconsistent findings has no application where a party to an action presents a request to the court in the alternative for two sets of findings, which are inconsistent in some particulars, for it is not objectionable to present findings covering different phases of the case which the testimony may support.

NOTICE OF APPEAL — PROOF OF SERVICE — SUFFICIENCY.

Under the statutes of this state governing appeals, it is unnecessary that proof of service of a notice of appeal should show where it was served, since service may, by statute, be made either within or without the state, and written admission of service is sufficient, without stating the place and manner of service, as is required in proof of service of summons.

EVIDENCE — TRANSACTIONS WITH DECEASED PERSON — ADMISSIBILITY.

Bal. Code, § 5991, which provides that no person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, provided, that in an action or proceeding where the adverse party sues or defends as deriving right or title by, through, or from any deceased person, then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him by, any such deceased person, has no application where the person offered as a witness was merely a party to the original contract with the deceased person, but is not a party to the suit, either directly or indirectly, and not bound in any way by the judgment in the particular proceedings in which the testimony of such witness is offered.

SAME — COMMUNICATIONS BETWEEN HUSBAND AND WIFE — PRIVIL-
EGED CHARACTER.

*Semble,* that Bal. Code, § 5994, which provides that neither a
husband nor wife shall, during marriage or afterwards, without
the consent of the other, be examined as to any communication
made by one to the other during marriage, is restricted to confi-
dential communications, induced by the marital relation, and not
to conversations relating to matters of business since it must be
interpreted in conjunction with Bal. Code, §§ 4504, 4505, which
provide that contracts may be made by a wife and liabilities in-
curred, and the same may be enforced by or against her, to the
same extent and in the same manner as if she were unmarried,
and actions may be instituted by one spouse against the other to
establish whether the real estate conveyed to either is commu-
nity or separate property.

SAME — OBJECTION TO ADMISSION OF HUSBAND'S DECLARATIONS —
SUFFICIENCY.

An objection that transactions and conversations between
husband and wife were inadmissible in evidence on the ground
of being incompetent, irrelevant and immaterial, is insufficient
to afford ground on appeal to urge the specific objection that
the matters testified to were inadmissible as being privileged
communications, which one spouse is forbidden, under Bal. Code,
§ 5994, to divulge without the consent of the other.

HUSBAND AND WIFE — SEPARATE CHARACTER OF PROPERTY — SUFFI-
CIENCY OF EVIDENCE.

In an action where the issue was as to the community or
separate ownership of real estate, the evidence was sufficient to
establish the wife's separate ownership therein, when it appeared
that her husband had declined to purchase the lots in dispute
from a would-be vendor, but referred the vendor to his wife as
having money to invest; that the wife bought the lots with $1,000
in money given her by her son out of the proceeds of her former
husband's estate and with $700 given her by her then husband,
and built thereon houses costing $5,000 with money also given her
by her husband; that the husband acquired considerable real
estate after marriage, but this was the only parcel directly con-
veyed to the wife; that he always referred to it as her property
and she dealt with the agents who had charge of it, receiving
the rents herself and arranging for repairs.

Appeal from Superior Court, King County.—Hon.
JESSE P. HOUSER, Judge. Reversed.

*George E. de Steiguer,* for appellant.

*Patterson & Easly* and *William L. Thompson,* for respondents.

PER CURIAM.—One Daniel J. Sackman, prior to the year 1867, was living at Tracyton, in Kitsap county, Washington, with an Indian woman, and by her he had children, among others the plaintiffs in this case. So far as the record shows, Daniel J. Sackman was never married before his marriage to Elizabeth W. Phillips. In July, 1864, said Sackman made a will, in which he acknowledged that the plaintiffs herein, naming them, were his children. This will does not appear to have been admitted to probate, but it was found among the papers of Daniel J. Sackman by his son Isaac shortly after Mr. Sackman's death, and has been in the custody of the plaintiffs ever since. About 1868 this Indian woman died, and afterwards, in 1877, Daniel J. Sackman married Elizabeth W. Phillips, who was, before her marriage to Sackman, the widow of one Phillips, and during this marriage, and while said Daniel J. Sackman and Elizabeth W. Sackman were living together as husband and wife, the real property in dispute was acquired. The grantee named in the deed was Elizabeth W. Sackman, and the grantors were Samuel L. Crawford and Charles Hilton, the first named being a witness in this suit. The consideration named in the deed was $1,700. Shortly after this deed five dwelling houses, costing in all $5,000, were built on the property. In 1889 Daniel J. Sackman died, leaving surviving him, as his sole and only heirs at law, his widow, Elizabeth W. Sackman, and his three sons, acknowledged by him in his will, the plaintiffs herein. Afterwards one Joseph Phillips, son of Elizabeth W. Sackman, was appointed administrator of Daniel J. Sackman's estate. The

property in dispute was not mentioned in the inventory filed by him, either as the separate property of Elizabeth W. Sackman or as community property of Elizabeth and Daniel J. Sackman. On March 5, 1890, Elizabeth W. Sackman mortgaged the property to the Jarvis-Conklin Mortgage Trust Company, and the appellant claims title under this mortgage by sheriff's deed dated November 13, 1899, under a sheriff's sale of the date of June 30, 1898, in a foreclosure proceeding against Elizabeth W. Sackman and the Sackman-Phillips Investment Company, by appellant, as assignee of the mortgage to the Jarvis-Conklin Mortgage Trust Company. In 1891, and after this mortgage was given, the administrator of Daniel J. Sackman was discharged. In December, 1891, Elizabeth W. Sackman, after giving the mortgage to the Jarvis-Conklin Trust Company, conveyed the property in controversy, with a large lot of other real estate, to the Sackman-Phillips Investment Company, under a general warranty deed, in which no mention was made of the mortgage to the Jarvis-Conklin Mortgage Trust Company. There is evidence tending to show that in 1888, and prior to the death of Mr. Sackman, the rents were collected and given to Mrs. Sackman. There is no proof as to what was done with the rents, or who occupied the property during the time intervening between the death of Sackman, in 1889, and the discharge of the administrator, in 1891. Subsequently to 1891, Elizabeth W. Sackman and her grantees have collected and appropriated all rents. In January, 1899, the plaintiffs filed their complaint herein with the clerk of the superior court of King county, and later in the same month all of the defendants, excepting only the defendants Thomas, were personally served with summons herein, and on November 3, 1899, the defendants Thomas voluntarily appeared herein. In their

complaint the plaintiffs sought to have the property in dispute, viz., lots 2 and 3, in block 64, of Terry's Second addition, partitioned, and one-half allotted to them, and one-half to the Sackman-Phillips Investment Company. There was a prayer also for an accounting of the rents and profits for the five years preceding the filing of the complaint. There was also an allegation that at all times mentioned in the complaint the Sackman-Phillips Investment Company was the owner of one-half of the property, and that the other defendants claimed to have some lien, title, interest, claim or demand in the property, but that the interest of the plaintiffs in an undivided one-half was superior to such liens, claims, etc. To this complaint the defendants Thomas and wife answered, setting up six separate defenses: They denied the allegations of complaint; they alleged that they became the fee simple owners of all said property by virtue of foreclosure proceedings of the mortgage hereinbefore mentioned; they pleaded the statute of limitations; they pleaded that their title had been confirmed and quieted by paying taxes for seven consecutive years; they pleaded a lien on account of taxes and street improvement taxes paid; they pleaded that they had made improvements on the property amounting to $1,000.

The court below found, as a conclusion of law from the facts, that the property was the community property of Daniel J. Sackman and Elizabeth W. Sackman, and not the separate property of Elizabeth W. Sackman; that the appellant was entitled to only an undivided one-half of the same, and that the plaintiffs were entitled to the other undivided half. The controversy is over the question whether the property was the community property of Daniel J. and Elizabeth W. Sackman or the separate property of Elizabeth W. Sackman. The respondents move the

court to dismiss the appeal,—First, because this appeal and assignments of error are all based upon the insufficiency of the evidence to support the findings of fact and conclusions of law, and appellant has failed to request any findings or conclusions of law, such as he claims should have been found, and he has tendered and requested the court to make two entirely different and inconsistent findings, towit: one finding that the property is community property and one finding that it is separate property; second, because the proof of service of notice of appeal on respondents Sarah Sophia Thomas and Sackman-Phillips Investment Company is insufficient, in that it fails to show the place where service is alleged to have been made.

This motion is based upon two grounds. The first is that the appellant has failed to request any findings of fact or conclusions of law such as he claims should have been found, and has tendered a request for inconsistent findings. In fact, the appellant did request such findings and conclusions as he claims should have been found. After the court had announced at the close of the trial its rulings on the admissibility of Mrs. Sackman's testimony, which had been received subject to objection, the appellant filed and presented to the court, and requested the court to sign, findings of facts as follows:

"That heretofore, to-wit: on or about the 21st day of March, 1883, S. L. Crawford and Charles Hilton sold and conveyed to Elizabeth W. Sackman those certain premises situated in King county, state of Washington, and particularly described as follows, to-wit: Lots 2 and 3, in block 64, in C. C. Terry's Second addition to the city of Seattle.

"That the said Elizabeth W. Sackman, at the time of so purchasing said property was a married woman, and the name of her husband was Daniel J. Sackman.

"That the price of said land paid by the said Elizabeth W. Sackman to the said Crawford and the said Hilton was the sum of seventeen hundred dollars ($1,700).

"That of said purchase price, one thousand dollars ($1,000) was a gift made to her by her son, William R. Phillips, and was her separate property.

"That of said purchase price the remaining seven hundred dollars ($700) was a gift from her husband, Daniel J. Sackman, and was her separate property.

"That at the time of the conveyance of said property to the said Elizabeth W. Sackman, it was the intention of the said Daniel J. Sackman and Elizabeth W. Sackman that the same should be the separate property of the said Elizabeth W. Sackman.

"That after the conveyance of said property to the said Elizabeth W. Sackman, it was generally spoken of by the said Daniel J. Sackman and by him treated as the separate property of the said Elizabeth W. Sackman," etc.

These findings the court refused to make or sign, and exceptions were taken, after which the appellant further filed and presented to the court the following request:

"If the court finds that any portion of the purchase price paid by the defendant Elizabeth W. Sackman for the property described in this action was community property of herself and her husband, then the defendant Charles L. Thomas asks that the court find that One Thousand Dollars ($1,000) thereof was paid for with her separate property which she derived from her son, William R. Phillips; that by reason thereof ten seventeenths (10-17) of said property then became her separate property, and that upon the death of her husband, she succeeded and became entitled to one-half of the remaining seven-seventeenths (7-17); and that the defendant Charles L. Thomas, by reason of his title derived from the said Elizabeth W. Sackman and the foreclosure proceedings against her, has succeeded to, and now is the owner of, the undivided thirteen and one-half seventeenths (13½-17), or twenty-seven-thirty-fourths (27-34), of said property.

"The defendant Charles L. Thomas further asks the court that if the court finds the plaintiffs entitled to any interest in said property, then the court decrees that said interest is subject to a lien in favor of the said Charles L. Thomas for such proportion of the taxes and legal assessments paid upon said premises by the said Charles L. Thomas and Sackman-Phillips Investment Company, said payments so made being set forth in the fifth affirmative defense to the complaint, as said interest decreed to plaintiffs bears to the whole of said property."

Exceptions were also taken to the refusal of the court to make the last findings. There is certainly no inconsistency in these requests, and the authorities cited by the respondents upon this point have no application to this case. If the court had found as first requested, then it is evident the subsequent request would not have been tendered. The tender of the subsequent request was dependent upon the action of the court on the first request. The appellant had the right to consider the testimony in the alternative presented by the two sets of findings. If both findings so presented had been approved, then there would have been an inconsistency, and the authorities cited by the respondents would have been in point. The testimony might support either of the proposed findings. If the court had rejected the first and approved the last, the appellant would be bound thereby. The practice adopted in presenting findings to cover different phases of the case under the evidence is not objectionable, and the same reason does not apply as when the court makes inconsistent findings.

The second ground of the motion—the alleged insufficiency of proof of service of notice of appeal on respondent Sarah Sophia Thomas and the Sackman-Phillips Investment Company—is not well taken. The notice of appeal is not governed by the same law as the summons. "It

shall be served in the manner required by law for the service of papers in civil actions and proceedings." Bal. Code, § 6504. Written admission of the service is sufficient. Id., § 6503. This service is governed by §§ 4888 to 4892, Id., which sections are declared in terms, by § 4893, Id., not to be applicable to the service of a summons. There is good reason for requiring, as the statute does require, that the proof of service of summons should state the place served. In many cases service outside of the state would be void, and in any case cannot be made outside of the state, except on compliance with certain conditions. When jurisdiction of a party is once obtained, a different rule prevails, and § 4892, Id., provides that such service may be made either within or without the state. There is no law requiring proof of service of a notice of appeal to show where it was served, and when an attorney admits "due service and receipt of a copy thereof," as in this case, the admission is sufficient.

There is little conflict in the testimony, and, where questions of fact are to be determined, they turn, not upon the comparative credibility of witnesses, but upon the competency of testimony and the legal effect of the evidence. The negotiations leading up to the conveyance of the property in controversy in this action, and the circumstances surrounding the same, were as follows:

Mr. S. L. Crawford, now of the firm of Crawford & Conover, of Seattle, Washington, was, in the year 1883, engaged with Mr. Thomas W. Prosch in the business of publishing the Post-Intelligencer. Mr. Sackman had just bought from Mr. Prosch two lots on Ninth avenue, and Mr. Crawford, when at Port Blakeley, spoke to Sackman about selling him two lots owned by Mr. Crawford and Mr. Hilton on the same street. Mr. Sackman (to give a portion of Mr. Crawford's testimony verbatim), "said

that he did not have any more money at that time to invest, but that Mrs. Sackman, or, to speak correctly, he always spoke of her as Auntie. He said, 'Auntie has some money that I think she would like to invest, and I think you had better go up to the house and see her.' And I went up to the house, and talked with her about the property and told her where it was, etc., and she subsequently bought the property and paid for it." Mr. Crawford's recollection was that Mrs. Sackman paid him $500 of the purchase price at the time, and sent him the balance of the money later. Some time after the purchase of the property there was erected thereon five tenement houses. Mrs. Sackman testified that the money necessary for the building of these houses was given to her by her husband. There was no other testimony as to where the money came from, nor upon what terms Mrs. Sackman procured it. The advice of one Edwards, a real estate agent, was taken about securing the contractors, etc., and both Mr. and Mrs. Sackman talked about the houses, planning and arranging them, and during these consultations Mr. Sackman referred to it as Mrs. Sackman's property. After the construction of these buildings the property was in charge of several agents, who collected the rents, paid the taxes, arranged for repairs, etc. To one of these agents, J. W. Edwards, Mr. Sackman repeatedly spoke of the property as Mrs. Sackman's property. During the years 1885 and 1886 little could be realized from the rentals of the houses, and Mr. Sackman, in speaking to Edwards about the matter, stated that "she had made a poor investment." While Mr. Edwards had no personal knowledge of where the money that paid for the property came from, nevertheless, upon cross-examination by plaintiff's counsel, he testified that, from the conduct of the parties, their statements, etc., he believed it was intended to be the prop-

erty of Mrs. Sackman. Edmund Bowden, in the year 1888, was in Mr. Edwards' office, and attended to the collection of rents, etc. He testified that he collected the rents of this particular property, "supposedly for Mrs. Sackman." The houses were called Mrs. Sackman's houses, and were supposed to be hers. He remembered making several reports on the property, and receiving replies from Mrs. Sackman, in regard to the plumbing and one thing and another. Fred E. Sander, of Seattle, also handled the property. He testified that he was handling the property for Mrs. Sackman, and had repeated conversations with her about the same; that he talked very little with Mr. Sackman upon the subject; when he did, Mr. Sackman would refer him to his wife. Mr. Sackman told Mr. Sander that it was his wife's property. He stated to Sander, referring to this property, that his wife had made an investment that did not pay, and he could "give her the horse laugh." A portion of his testimony, upon cross-examination, is as follows:

"A. For quite a while we were not getting any rent, that is, we would get tenants, and used to have to pay probably five or six dollars down for the month's rent, and then we would have to spend ten or fifteen dollars to get the tenants out, and he complained, and not only him, but Mrs. Sackman complained.

Q. He complained?

A. Yes, sir. He said that we weren't doing any better than the other agents. I told him that we could not rent them unless they were fixed up. Well, he said, 'Go and see my wife; it is her property, and let her do what she has a mind to. I can give her the horse laugh now.' "

Mr. Sander handled the property for several years, and the different agents mentioned had it in charge from the time of the construction of the buildings down to the death of Mr. Sackman. Mrs. Sackman testified, over ob-

jections hereafter stated, that the rents of the property were received by her. There is no conflict in the evidence about any of the foregoing facts. There is only one point in the evidence which can in any manner avoid the inference to be derived from them; that is, that once Mr. Sackman pointed out five houses on Ninth street to Theodore O. Williams, and spoke as if they belonged to him (Sackman); and to quote the witness's testimony:

"He went up to show me some houses,—his houses; he told me he had built five houses on two lots, and I went up and looked at them, and at that time he thought it was not a very fair investment, because he had poor tenants, he told me."

This testimony was objected to. In the foregoing statement no reference is made, save as to the receipt of rent, to the evidence of Mrs. Sackman, which the court admitted subject to objections to any testimony given by her as to any personal transactions or conversations had with Mr. Daniel J. Sackman, her husband, on the ground that the same was irrelevant, incompetent, and immaterial under the statute, as the defendants claimed under her. Thereafter the court, when the trial closed, and at the time of announcing its decision, held her testimony incompetent, and struck out all of her testimony as to the source from which she got the money which she paid for the property, and held that her testimony was incompetent so far as it related to her negotiations for, and purchase of, the property; to which rulings due exception was taken. Her evidence is to the effect that of the $1,700 paid by Mrs. Sackman for the property, $1,000 was derived from the estate of Mrs. Sackman't first husband, Mr. Phillips. Mrs. Sackman testified that this $1,000 was the proceeds of certain property belonging to her former husband, situated on the corner of Taylor and Sutter

streets, in San Francisco; that it was paid to her son William R. Phillips, and by him given to her. In this statement Mrs. Sackman is corroborated by her son William R. Phillips. Mrs. Sackman further testified that the remaining $700, constituting the purchase price, was given to her by her husband for the express purpose of buying the property, and because he wanted her to have it for her own. She testified that he gave her the $5,000 to build the five houses on the lots after she had purchased them. Mr. Sackman, when he was married to Mrs. Sackman, owned more than two thousand acres of land, and bought considerable real estate after his marriage, but he never had any property bought by him deeded to his wife.

Was the testimony of Mrs. Sackman admissible in its entirety? If so, the finding of the court below that this was the community property of herself and Daniel W. Sackman, and not her separate property, cannot be sustained; for she testifies positively that one thousand dollars of the purchase price was her own separate property, which she obtained as a gift from her son; that the remaining seven hundred dollars of the purchase price was a gift from her husband; that the money to build the houses on the property was also a gift from her husband; and in this testimony she is corroborated by other facts and circumstances in the case. Her testimony is not contradicted by any legitimate testimony or unanswerable inference. The respondents claim that she is disqualified from testifying, because she is a party in interest, and cannot, therefore, testify, under § 5991, Bal. Code, to conversations and transactions with her deceased husband. That section reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of

the action, as a party thereto or otherwise; but such interest may be shown to affect his credibility: *Provided,* however, That in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify *in his own behalf* as to any transaction had by him with or any statement made to him by any such deceased or insane person, or by any such minor under the age of fourteen years: Provided further, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and who have no other or further interest in the action."

"The modern tendency, both of legislation and of decisions of courts, is to give as wide a scope as possible to the investigation of facts." *Holmes v. Goldsmith,* 147 U. S. 150 (13 Sup. Ct. 288).

Courts also hold that it would be going too far, on assumed propriety, to add a disqualification to a witness not specified in the statute. *Cochran v. Almack,* 39 Ohio St. 314; *Hildebrant v. Crawford,* 65 N. Y. 107. The statute in question, but for the proviso, declares that no person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action. The proviso provides for an exception to this general declaration. Now, it is a rule of construction that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause, and those who set up any such exception must establish it as being within the words, as well as within the reason, thereof. The supreme court of the

United States, speaking through Justice STORY, thus announces the rule:

"Passing from these considerations to another, which necessarily brings under review the second point of objection to the charge of the court below; we are led to the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause, and those who set up any such exception, must establish it as being within the words as well as within the reason thereof." *United States v. Dickson,* 15 Pet. 141.

With these general principles in view, let us analyze the proviso of § 5991, *supra.* If the words, "in his own behalf," had been omitted from the proviso, the contention of the respondents would be well founded. But from the section it is apparent that a party in interest may testify, but "not in his own behalf." He certainly may testify against himself under this section. But when is a party said to testify in his own behalf? Is it when he testifies to a state of affairs that may collaterally or remotely affect his interest, or is it when he testifies to a state of affairs in a judicial proceeding in which his interest is bound by the proceedings? For instance, if he was a beneficiary in the action prosecuted by a trustee, although not a nominal party to the record, or if he had been required by notice to defend the action for the purpose of charging him as a principal on a promissory note, or under a covenant of warranty in a deed, so that the judgment in the action would be binding upon him, then he might be said to be testifying in his own behalf, although not a party to the record. Mrs. Sackman was not a necessary party to this action.

No notice was given to her to defend it, nor had she undertaken to defend it. She was not a party to the action, but was merely called into the case as a witness, like any other witness. She had no right to introduce testimony in "her own behalf." She could not cross-examine witnesses. She was not bound by the actions of the parties or their attorneys in the case. She was not bound by any judgment rendered in the case, or any fact adjudicated in the case. She could not prosecute an appeal. How, then, could she be said to be testifying "in her own behalf?" *Anderson v. Bigelow,* 16 Wash. 198 (47 Pac. 426); *Cullity v. Dorffel,* 18 Wash. 122 (50 Pac. 932).

Margaret C. Wallace, as executrix of the estate of F. B. Wallace, brought an action against Moses Straus on these facts: Ferdinand Straus was indebted to her testator in his lifetime in the sum of $11,500, for which he held certain railroad stock as collateral security. A new firm of F. B. Wallace & Co. was organized. Moses Straus agreed that, if this indebtedness was transferred to the new firm, he would guarantee her testator from any loss by reason of holding and carrying said railroad stock. Wallace, to whom the guaranty was made, died. The executrix served notice on Moses Straus, the defendant, and Ferdinand Straus, to take up and pay for the stock. They failed to do so. The stock was sold, the amount received was credited on the debt, and the suit was to recover the balance. The following is from the opinion of the court:

"The defendant called his brother, Ferdinand Straus, as a witness, and he was asked: 'Did you give any instructions (to Wallace) in November, 1881, with reference to a sale of these two blocks of stock?' and the question was objected to by the plaintiff's counsel on the ground that the witness being the principal debtor, and the action being against his surety, he was interested in the event of the action and was, therefore, incompetent to

testify to a personal transaction with the plaintiff's testator under section 829 of the Code. The court permitted the witness to answer 'yes or no,' and he answered 'yes.' This question was followed by one calling for the instructions given, and the objection being renewed, the court sustained it and excluded the testimony. It must be assumed, in the absence of any objection on that ground, that the testimony offered was material. It is certainly possible that instructions might have been given by Ferdinand Straus to Wallace, the disregard of which would furnish a defense, in whole or in part, to the action. The question, therefore, is whether the witness was interested in the event of the action, as upon this ground only could the question have been excluded under section 829. The test of the interest which disqualifies a witness not a party, under this section, is stated by CHURCH, Ch. J., in *Hobart v. Hobart* (62 N. Y. 80), in construing a corresponding section of the prior code, adopting substantially the language in 1 Greenleaf on Evidence (§ 390). He says: 'The true test of the interest of a witness is that he will either gain or lose by the *direct* legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest remote, uncertain or contingent.' The same rule was reiterated in *Nearpass v. Gilman* (104 N. Y. 507). The witness Ferdinand Straus was not interested within the rule. He was not bound by the judgment rendered against the surety. It is plain that the judgment would not determine his liability in an action subsequently brought by Wallace against him to recover the debt or in any way limit it, except that if collected it might operate as payment in full or *pro tanto* of the debt. So if the surety, having paid the judgment, should bring an action for reimbursement, the recovery against the surety would not fix the liability of the principal. The judgment against the surety would not be an adjudication as against Ferdinand Straus, that the surety had incurred any liability for which he was entitled to indemnity. It would be admissible to prove the fact of the judgment, and it would de-

termine the amount of the liability over the primary debtor
to the surety when his liability had been otherwise estab-
lished. This conclusion results from the 'most obvious
principle of justice, that no man ought to be bound by
proceedings to which he was a stranger.' (1 Greenl. Ev.
522.) Ferdinand Straus was, within this principle, a
stranger to the suit against the surety. He was not a
party, nor, so far as it appears, was any notice given to
him by the surety to defend the action, nor had he un-
dertaken the defense. It may be assumed, from the fact
that he was called as a witness, that he knew of the pen-
dency of the suit. But before he could be bound by the
judgment he must have been placed by the act of the
surety in a situation calling upon him to assume the con-
trol of the action or to aid in its defense, as though a
party, with the right to adduce testimony and to cross-
examine witnesses, and to appeal from the judgment (1
Greenl. Ev. § 523). The bare fact that he was called as
a witness by the surety, nothing else appearing, did not
bind him by the result of the litigation. It will be found
in the cases upon the subject that something more was
necessary. There must be formal notice to defend or
something tantamount to such notice, given by the surety,
or the principal must have assumed the defense of the
action, or aided in preparing the defense in order to bind
him by the result. (*Barney v. Dewey,* 13 Johns. 224;
*Brewster v. Countryman,* 12 Wend. 446; *Chicago v. Rob-
bins,* 2 Black, 418; *Lovejoy v. Murray,* 3 Wall. 1.) In
short, no fact determined against the surety in the action,
or which might have been determined therein, would, un-
der the circumstances disclosed, when the ruling in ques-
tion was made, be available to, or would bind the witness
in any subsequent action brought against him either by
the surety or the creditor Wallace."

The court held that the proposed evidence, for the rea-
sons given, was erroneously excluded. *Wallace v. Straus,*
113 N. Y. 238 (21 N. E. 66.) We quote from a Texas
case,—*Stevens v. Masterson's Heirs,* 90 Tex. 417 (38 S.
W. 293):

"Smith had never, in fact, been a party to the proceeding, because he had never been served with process nor did he voluntarily appear in this case. But it is claimed that he had notice of the pendency of the suit, and, being a warrantor, would be bound by the judgment, although not made a party by the pleadings, and therefore was disqualified to testify to the statements of T. W. Masterson, deceased, father of plaintiffs. A warrantor, although not made a party to the proceedings, may be notified by his warrantee of the pendency of a suit against him and called upon to defend that suit; and, if the notice be timely and definite and the warrantor fails to make the defense, a judgment will be conclusive upon him to show that his warrantee has been evicted by a paramount title. 2 Black on Judgments, § 567; 19 Am. & Eng. Enc. Law, 1012. No notice was given by McLeary to Smith to defend the title involved in this suit. On the contrary, McLeary, after taking steps indicating an intention to call upon his warrantor to defend the title, retracted and discharged him from the case. Under such circumstances the judgment rendered would not bind Smith in a subsequent action between McLeary and Smith.

"If it were held that mere knowledge on part of the warrantor that a suit was pending would make him party to that suit and bind him by the judgment and thus disqualify him as a witness, then no warrantor could testify in a case in which parties are disqualified, because in the very act of taking his evidence, whether by deposition or orally, he would receive information that the suit was pending and would thereby be disqualified under such rule. There was no error in admitting the evidence of Smith." *Anderson v. Bigelow, supra; Cullity v. Dorffel, supra.*

The law of Massachusetts provided that, where one of the original parties *to the contract* or *cause of action* in issue and on trial is dead, the *other party* shall not be admitted to testify *in his own favor.* The supreme court of Massachusetts, in construing this, said:

"At the trial the defendant objected to the competency of John W. Howland, who was produced as a witness by

the plaintiff in his behalf, upon the ground that he was one of the parties to the contract or cause of action declared on in this suit. This objection was founded upon a misapprehension of the meaning of the proviso, 'that when one of the parties to the original contract or cause of action is dead, the other party shall not be permitted to testify in his own favor,' contained in the section of the statute making parties in civil actions and proceedings competent witnesses. Gen. Sts. c. 131, § 14. That proviso relates wholly to persons who are parties to the suit the issue arising in which is on trial, and not to others who were merely parties to the original contract. This is obvious from the consideration that the prohibition excludes those only from being witnesses, who might otherwise, under the general provision of the statute, testify in their own favor. They who are not parties to the suit, either directly or indirectly, must necessarily testify in favor of one or the other of those who are, and of course not in their own. Interest in its event does not operate as a disqualification. Gen. Sts. c. 131, § 13. Howland was not a party to this suit." *Jones v. Wolcott,* 15 Gray, 542.

The terms "in his own behalf," as used in our statute, and "in his own favor," in the Massachusetts statute, are synonymous. It seems to us that the principle deducible from reason and these authorities is that, where one's interest is not bound by the judgment in the particular proceedings in which he testifies, he cannot be said to be testifying "in his own behalf." The case of *Youngs v. Cunningham,* 57 Mich. 153 (23 N. W. 626), cited by respondents, holds that a party who has conveyed land by warranty deed, in an action of ejectment brought by his grantee against the heirs of one who had acquired title by adverse possession, cannot testify with respect to facts equally within the knowledge of the deceased. That court says:

"The witness had executed to plaintiff a warranty deed of the land is question. He was under covenant to sustain the title, and the suit was in effect his suit to try the title to the land. If not within the express letter he comes

within the meaning and spirit of the statute, and is precluded thereby from testifying to facts equally within the knowledge of the deceased."

The trial of the case at bar in no way involved the warranty of title given by Mrs. Sackman to the Sackman-Phillips Investment Company, for that company did not lose the property by reason of any defect in the title, but through the mortgage incumbrance, and Thomas held only under this mortgage. What the covenants of the mortgage were does not appear in this action, further than that the mortgagor was to pay the debt secured. In *O'Brien v. Weiler,* 140 N. Y. 281 (35 N. E. 587), cited by respondents, it was held:

"The restriction was not limited to an interested witness, called in his own behalf, but extends to all cases where it is sought to examine the witness in behalf of a party or person interested in the event, who derives title to the subject-matter of the action by assignment or otherwise from the witness as against the representatives or assignee of a deceased person. If it is claimed that the witness has divested himself of interest, it does not follow that he is thereby rendered competent. The test is to be sought in the legal effect of the instrument by means of which his interest was extinguished. It matters not by what name it is called; if it operates in law to vest in another party to the action, or in a person interested in its event, the title or interest which the witness formerly had, the prohibition remains if it is proposed to use the testimony of the witness in behalf of his successor in interest."

The New York statute (§ 829, Code of Civil Procedure), differs materially from our statute. That section is: "Upon the trial of an action  .  .  .  a party or person interested in the event, *or a person from, through or under whom such a party or interested person derives his interest or title,* by assignment or otherwise, shall not be examined as a witness in his own behalf or interest,

*or in behalf of the party succeeding to his title or interest,"* etc. Of course, under such a law as this, the rule contended for by appellant would not apply; but we should not inject these provisions into our statute by a judicial construction, for that is a matter of legislative policy, and not a function of the court.

The respondents claim that the decisions of this court sustain their views. In *Gilmore v. The H. W. Baker Co.,* 12 Wash. 468 (41 Pac. 124), where one H. W. Baker, the president of the defendant corporation, was asked concerning a conversation with one Kirkman, deceased, before the organization of the corporation, as to the modification of a contract of lease made with Baker, and to which the corporation succeeded by assignment from Baker, the court says:

"It appears from the record that the appellant corporation was organized on February 1, 1893; that the original lease to these premises was executed to H. W. Baker, and thereafter the same was assigned to Bacon & Baker and by them to H. W. Baker Co. and by H. W. Baker Co. to the corporation known as "The H. W. Baker Co.," the appellant.

"The conversation in question occurred before the appellant corporation was organized. It related to a transaction in which the witness was at that time the *real party in interest* and in which *the witness was representing himself.* The fact that the present corporation (appellant) succeeded to the business of Bacon & Baker and H. W. Baker Co., and that the witness became its president and one of its stockholders, did not remove the disability which the law imposes upon him as a party in interest. To hold otherwise would, for practical purposes, be to ignore the spirit of the statute, by permitting one, whom the law from considerations of public policy requires to remain silent as to any transaction had by him with a deceased person, to evade the statute and avoid the disability imposed by it and become an effective witness merely by assigning his interest in the subject-matter of the action,

or by forming a corporation in which he might be the president and only stockholder, and thus by indirection accomplish that which the law prohibits to be done. For this reason alone, we think the testimony was properly excluded, and we do not feel called upon to pass on the question of whether an officer of a corporation can be permitted to testify to a transaction with a deceased person, in a suit between such corporation and the representative of such deceased person."

In this case, notwithstanding the transfer, H. W. Baker was not only the president of the corporation, but he was a stockholder, and thus an interested party, and, in effect, was testifying in his own behalf. In *Thorne v. Joy,* 15 Wash. 83 (45 Pac. 642), the rule excluding the testimony was applied to one who had conveyed away his interest in the land, which was the subject-matter of the action, by a deed absolute on its face, but which was in reality only a mortgage, and where the witness, *for the purpose of rendering his testimony competent,* had executed a release of his right to redeem. The court, however, in that case, says: "In our opinion, the undisputed proof showed that said Anderson [witness] *was at the time of the trial interested in the result of the action adversely* to the representatives of said Sprague. . . . It follows that the court properly struck the testimony of said Isaac W. Anderson from the record, unless his release of his right to redeem made him a competent witness, and, *under the circumstances,* we think it did not." There this court held, in effect, that Anderson was testifying in his own behalf in the action, and, *under the circumstances,* his release was a sham. The fair inference from this case is that, if it had not been for the peculiar circumstances of the case, Anderson's testimony, if he had not been interested in the action itself so that his interest was bound by the judgment, would have been competent. We conclude that

Mrs. Sackman's testimony was admissible touching all the facts she testified to.

The further objection to Mrs. Sackman's testimony is made by respondents that she cannot testify under sub-division one, § 5994, Bal. Code, which reads:

"A husband shall not be examined for or against his wife without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor shall either, during marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

Contracts may be made by a wife, and liabilities incurred, and the same may be enforced by or against her, to the same extent, and in the same manner, as if she were unmarried. Bal. Code, § 4504. Under our laws, the husband and wife may acquire separate real estate, or they may acquire community real estate. The conveyance of such property is generally evidenced by a deed conveying to one or the other of the spouses, and nothing appears therein to indicate the character of the estate. If the conveyance is made during coverture, the presumption arises that it is community property. This, however, is only a presumption, and may be overcome by evidence. Necessarily, this evidence, in most instances, is the knowledge of the husband or wife, of the facts touching the origin of the consideration. Actions may be instituted by one spouse against the other to establish whether the real estate conveyed to either is community or separate property. Bal. Code, § 4505. All actions affecting real estate must be prosecuted or defended in the name of the real party in interest. Says Jones in the Law of Evidence, § 765:

"Modern legislation has greatly enlarged the powers of

married women in respect to making contracts, the bringing of actions and in the control of their property and person. The right to make contracts, and to bring actions is, in some cases, a barren one, unless accompanied by the right to give testimony in its support; and it has been generally found necessary that those who are parties should be competent witnesses. The fact that married women are far less dependent, than formerly, upon the caprice of their husbands, in respect to their control of person, property and children, may, at least to some extent, remove the objection to the disclosure even of communications made during marriage. It may be conceded that there are objections to any policy which may compel husband and wife to appear in court in an attitude of hostility to each other. On the other hand, there are objections to arbitrary rules of evidence which suppress the truth in the administration of justice. In very many branches of the law of evidence, ancient rules excluding certain classes of testimony have been compelled to yield; and it would be by no means surprising, if, in the near future, the competency of husband and wife as witnesses would cease to be questioned, except as to those confidential communications with each other which are induced by the marital relation. Indeed, in England and in a few states, the rule has already been adopted that husband and wife are competent to testify for or against each other in civil actions as to all facts except confidential communications."

Should we not hold, in view of the legislation of this state as indicated, that this section should be confined to confidential communications only,—that is, such as are expressly made confidential, or are of a confidential nature, or are induced by the marital relations,—and not to ordinary conversations, relating to matters of business, in which either party had a right to engage, such as acquiring real estate separate from the other?

The appellant in his brief seems to concede that the objection to Mrs. Sackman's testimony was also made on the ground that it was a communication between husband and

wife, under § 5994, *supra.* An examination of the record, however, discloses that the objection was as follows: "Mr. Patterson: If your honor please, the plaintiffs desire to object to any testimony given by this witness [Mrs. Sackman] as to any personal transactions or conversations had with Mr. Daniel J. Sackman, on the ground that the same is irrelevant, incompetent, and immaterial under the statute; these parties all claiming under her." It is plain that this objection went only to the grounds for exclusion, under § 5991, Bal. Code.

These questions were asked Mrs. Sackman:

"Whose money paid for that?

"Objected to by plaintiffs as involving personal transactions with the deceased and as incompetent.

"Where did you get the rest of that money?

"Mr. Patterson: I make the further objection that it involves a declaration had with the deceased, and any statement made to this witness by him would not be admissible.

"The Court: I think I will take her testimony, and then I will settle the question afterwards."

The court, after argument of counsel, took the cause under advisement, and on the first of June, 1900, rendered its decision. The record says:

"The court then announced its ruling upon plaintiffs' objection to witness Elizabeth W. Sackman, and ruled and decided that said testimony was incompetent, in so far as said witness testified as to what money she paid as the purchase price of the property involved in this action; that the testimony of said witness was incompetent to show where and from whom she got the money which she paid as the said purchase price, or any part thereof; and that the testimony of said witness was incompetent as to her negotiations for and purchase of said property; and ruled that said incompetent testimony, and none thereof, could be considered as a basis for the court's decision or findings herein."

This is all that appears in the record as to the objection to, and rulings of the court on, Mrs. Sackman's testimony. We have held that her testimony was competent. The specific objection that the matters testified to by her were privileged communications, under § 5994, *supra,* was not made in the court below, and, as far as the record shows, not even referred to. The right to testify might have been waived by the husband in his lifetime. When an objection under this section is made, it should be specifically on the grounds set forth in the section, and not that the testimony is incompetent, irrelevant, and immaterial. Under the objection made to the testimony in the court below, we are not required to pass upon the objection now urged in this court for the first time.

As to the testimony of Theo. O. Williams, to the effect that Mr. Sackman in his lifetime stated to Williams, that the property was his, this evidence was objected to by the appellant. The statement was not made in the presence of Mrs. Sackman or the appellant. It was a mere casual remark. It was wholly unconnected with any negotiations for the purchase of the property. If admissible at all, it is not of sufficient force to overcome the statements made by Mr. Sackman when dealing directly with others concerning the property.

The deed to Mrs. Sackman expresses a money consideration only, and this court has held that the presumption in such a case is that the property is community property, and that the deed, standing alone and uncontradicted by any evidence, amounts to a conclusive presumption that the subject-matter is common property. *Yesler v. Hochstettler,* 4 Wash. 350 (30 Pac. 398).

In the case of *Yesler v. Hochstettler, supra,* the court said:

"But the assertion of an exception merely requires the

production of proof either that the conveyance was in fact a lawful gift, or that the consideration was furnished by husband or wife individually out of funds or property which he or she was entitled, under the law, to hold as separate property. Whatever satisfies the court or jury of the truth of one or the other of these probative facts, will authorize the finding of the ultimate fact that the subject of the conveyance was separate and not common property, and thus the presumption will be overcome."

Consider the testimony of Mr. Crawford as to the purchase of the property. Mr. Sackman, when Crawford asked him to buy the property, said that he did not have any money to invest, but that his wife had money which she would like to invest. The fair inference from this is that the money his wife had was her separate money, and that she wanted to invest it on her own account. In pursuance of the direction from the husband, Mr. Crawford went and talked with the wife, told her where the property was, and she subsequently bought it. She seems to have conducted all the negotiations for its purchase. This piece of evidence alone is sufficient to overcome the presumption that the consideration was furnished by the community. In speaking about the property to Mr. Edwards, it was repeatedly referred to by Mr. Sackman as being Mrs. Sackman's property. Mr. Sackman told Mr. Sander that the property belonged to his wife, and that she had made a poor investment. The rents were also paid to Mrs. Sackman, and she gave directions about repairs. When this testimony, about which there is no conflict, is supplemented by that of Mrs. Sackman and her son, showing that one thousand dollars of the purchase price was a gift from the son derived from the sale of property belonging to her former husband, and that the rest of the purchase price was a gift from Mr. Sackman, the mere presumption arising from the deed alone must give place to the facts established by the testimony. These facts convince us that it

was her separate property. When the fact is once established, that when the property was acquired it was separate property of the wife, the presumption will be, in absence of evidence to the contrary, that houses placed thereon, through money derived from the husband, are also the separate property of the wife. The testimony in this case shows that Mr. Sackman was the owner of a large amount of unincumbered property, that he was liberal in giving money to his wife, and, though he acquired a large amount of property after his marriage, the two lots in controversy were the only property conveyed to his wife. It is not unreasonable to presume, independent of the testimony of the wife, that the $700, part of the purchase price, and the $5,000 to build the houses on the lots, were a gift from the husband to the wife, and that a husband situated as Mr. Sackman was would make such a gift to his wife. As we have already said, the same kind of a deed is ordinarily used to convey separate and community property. There is no particular sanctity, such as claimed by respondents, attaching to the consideration expressed in a deed.

"The only effect of the consideration clause in a deed is to estop the grantor from alleging that it was executed without consideration and to prevent a resulting trust in the grantor. For every other purpose it may be varied or explained by parol proof." *Goodspeed v. Fuller,* 71 Am. Dec. 576; *Cardinal v. Hadley,* 35 Am. St. Rep. 492.

The supreme court of California on this point says:

"It is well settled in this court that if a husband purchase an estate and pay for it out of the common property, and cause it to be conveyed to the wife by a deed of bargain and sale, with the intent that it shall become her separate estate, the transaction will operate and be upheld as a gift from the husband to the wife (*Peck v. Brummagim,* 31 Cal. 440; *Dow v. Gould & Curry S. M. Co.,* id. 653; *Ingersoll v. Truebody,* 40 id. 603; *Woods v. Whitney,* 42 id. 359.)

"The doctrine of these cases is, that, *prima facie*, property conveyed to the wife by a deed of bargain and sale is common property, but that it is competent for the wife to show by extrinsic proofs the true character of the transaction, on establishing which the deed will be held to operate as a conveyance to her of a separate estate. It is held that such proof does not contradict or vary the written instrument, except in so far as it explains the consideration, which it is always competent to do, even in an action at law." *Higgins v. Higgins,* 46 Cal. 259.

We hold that the evidence in this case clearly establishes that the property in controversy was the separate property of Elizabeth W. Sackman. For that reason we have not considered the questions raised by the pleadings as to limitations, laches, and estoppels, and as to the other points discussed in the briefs.

The judgment and decree of the court below is reversed and set aside. This action is remanded, with instructions to the court below to dismiss the same at the costs of the plaintiffs; appellant to recover his costs on this appeal.