[No. 39040. Department One. February 15, 1968.]

MARIA P. QUINN, *Respondent*, v. STANLEY MCPHERSON et al., *Appellants.**

*Reported in 437 P.2d 393.

*Skeel, McKelvy, Henke, Evenson & Uhlmann, Frederick V. Betts*, and *James M. Lindsey, Jr.*, for appellants.

*Richard C. Shanks*, for respondent.

LANGENBACH, J.†—This is an appeal from a jury verdict allowing plaintiff damages for a fall upon snow and ice on the sidewalk in front of appellants' premises.

Plaintiff alleged that on December 31, 1964, at 8 a.m., there was snow and ice on the street. After a summary judgment had been granted against her first complaint, she amended it to allege an unnatural accumulation of snow and ice at the place where she fell near the corner of appellants' store. She alleged that a drainpipe from the marquee over the front of the store violated the city ordinance in that it drained directly onto the sidewalk instead of through a hole in the sidewalk. This permitted the fallen snow on the marquee, when it melted, to drain onto the sidewalk where it fanned out and froze, creating an unnatural accumulation of ice which was covered by the newly fallen snow. When she stepped upon this snow and ice as she passed from under the marquee she slipped and fell sustaining serious injuries.

The appellants, the owner and the lessee of the premises involved, denied that she fell upon their property and affirmatively pleaded contributory negligence on her part.

Plaintiff testified she lived about two blocks north of the store. On that morning there was ice with a light coating of snow along the street on which she approached the store on her way to work. There was a marquee about 8 feet wide and 50 feet long over the front of the store under which there was no snow and ice, and the sidewalk was dry. As she stepped out from under the marquee and off the dry sidewalk, going south, she slipped on the snow and ice and fell. She did not state the exact spot of falling but marked an "x" on one exhibit as the approximate place. She managed to get to her feet and went to the door of the store

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

where a man assisted her inside. Later a clerk took her home.

No one had seen her fall. The store manager testified he examined the scene after her fall and found no ice or snow on the store property. This was corroborated by the man who had his independent butcher shop in the store premises and who had helped the plaintiff into the store. He said he saw no snow or ice until in the alley south of the store.

While the plaintiff admitted that she saw the ice where she had fallen, she could not tell whether it was a natural or unnatural accumulation of ice. It was asserted that this was caused by the snow melting on the marquee and coming down the drainpipe where it fanned out across the sidewalk and froze where she had to walk and thus caused her to fall.

Plaintiff relied upon expert testimony of a meteorologist to reconstruct and establish the unnatural accumulation of ice upon the sidewalk. He testified that from official weather records of that particular morning the temperature on top of the marquee was 34 degrees and on the sidewalk below it was 32 degrees, so that the snow melted on top of the marquee and ran down the drainpipe where it froze when it struck the sidewalk.

Heat radiating from the store windows and wall beneath the marquee assisted in melting the snow. He estimated that 15 to 20 gallons of water came down the drainpipe and froze on the sidewalk.

He estimated that from the size of the marquee there would have been about 400 square feet of snow on it. The water equivalent is about 1/10th; this would amount to 4 cubic feet of water or about 30 gallons. There was testimony that the snow melting on the marquee would be going down the drainpipe at the rate of 7.8 gallons per hour.

A mechanical engineer also testified that the heat from the windows and wall underneath the marquee would assist in melting the snow.

Appellants called an expert who measured the contours of the marquee and observed the discharge of rainwater

therefrom during a storm. He stated it required about 62.5 gallons of water to fill the depressions in the marquee before any water would run down the drain. It would fall into a depression or crack in the sidewalk next to the building and would not extend onto the sidewalk in any appreciable quantity. From the personal observations of this witness and his examination of plaintiff's photographs, also taken during a rain, the water would not extend more than 10 inches from the wall onto the sidewalk. It would follow a crack or divider therein south to the alley. These dividers are very apparent in these exhibits.

In front of the store there were three racks of presto logs immediately north of the drainpipe. These racks extend a little over a foot from the wall into the street. This is shown in an exhibit.

In rebuttal plaintiff conducted an experiment the Sunday before the last day of the trial. One witness mounted a ladder and poured 1 gallon of water down the drainpipe; the other witness photographed the result on the sidewalk. This was repeated by pouring 4 more gallons at one time down the drainpipe and again photographing the resulting spread on the sidewalk at the foot of the drain. Admittedly the weather conditions were entirely different in May 1965, when this experiment was performed, from December 1964, when plaintiff fell. This testimony and these photographs were admitted in evidence over the strenuous objections of appellants.

There was proof that the location and condition of the drainpipe was in violation of the city ordinance.

There were 12 assignments of error. These raised four main issues: a challenge to the sufficiency of plaintiff's proof; withdrawing the issue of plaintiff's contributory negligence from the jury; an improper statement by the court to the jury pertaining to hypothetical questions; and the admission of the testimony and exhibits of the experiment with the water poured down the drainpipe in May 1965, as contrasted with December 1964.

Appellants argued that the mere proof of violation of the city ordinance did not establish liability. The court in-

structed the jury that "[w]hile the violation of a city ordinance is negligence, such negligence will not render a defendant liable for damages unless such violation proximately caused the injury."

Since there was no proof by plaintiff that she slipped upon an unnatural accumulation of ice where she fell, it was argued that proof of causation was entirely lacking.

Plaintiff testified she walked down the street covered with snow and ice for about two blocks before she reached appellants' premises. She walked the length of the marquee on dry pavement. She testified:

Q. How did you fall Mrs. Quinn? A. Well, I don't know how to explain it because it happened so quickly. I just took a step—I was on the dry pavement, and I stepped into the snow, and it was icey underneath, and I fell down. . . . Q. But you stepped on the snow on top and then you fell? A. Well, I stepped from the dry place into this (indicating), and it was icey underneath, and my foot slipped off and I fell. . . . Q. (By Mr. Betts) As I understand it, Mrs. Quinn, you did not see the ice? The ice was covered with snow? A. Yes. It wasn't very much snow on that part of—that place. Q. But you did see the ice, did you? A. Yes. Q. You did see the ice? A. Just because you can see it kind of shiny underneath.

She also stated that after she fell she crawled over to the rack of presto logs under the marquee and raised herself to her feet. She did not state how far or in what direction she crawled to reach the presto logs in their rack against the wall of the store. Her testimony also showed that there was ice and snow all the way down from her residence to the place of falling. On this basis error is assigned to the failure of the court to instruct concerning contributory negligence. Proper exceptions were taken which raised the question that her negligence was a proper fact for consideration by the jury.

Appellants requested King County stock instructions on burden of proof and negligence and contributory negligence. In essence the court gave such an instruction with the exception of contributory negligence. Timely exceptions were taken. This in essence and in effect limited the

jury in its determination and consideration to the single question of the negligence of appellants and not to any act or circumstance of plaintiff which might have contributed to her injury.

Another proposed instruction included:

"Contributory negligence" is negligence or want of care, as herein defined, on the part of a person suffering injury or damage which proximately contributes to cause the injury and damage complained of. Contributory negligence bars recovery on the part of a person suffering injury or damage, even though the opposing party is guilty of negligence.

■ In *Hines v. Neuner,* 42 Wn.2d 116, 122-23, 253 P.2d 945 (1953), this court stated:

As already noted, we have decided in another context that the failure to see what admittedly was visible, if only one had looked, is not negligence automatically; it is a question of fact for the jury to decide whether, despite the failure to look, the plaintiff's conduct was still reasonable under the circumstances.

It was error not to give this instruction under the facts of this case.

In addition, the court gave instruction No. 7:

Ordinarily a pedestrian on a sidewalk may proceed on the assumption that the sidewalk is in a reasonably safe condition. During such time that a sidewalk may be covered with ice and snow, a pedestrian may proceed on the assumption that such natural hazards as may exist have not been increased or contributed to by the abutting owner. A pedestrian is not required to keep his eyes on the walk immediately in front of him at all times.

■ Proper exceptions were taken. There was no proof or evidence that the sidewalk was in a reasonably safe condition so that plaintiff was not required to watch her step. The evidence conclusively showed that the sidewalk from her residence on the north to the place of fall was covered with ice and snow except under the marquee. Consequently, the plaintiff, as a reasonably prudent person, was obliged to watch her step on this slippery surface. She should have observed where she was walking at all times.

Where danger is known and apparent, it is error to instruct the jury that a pedestrian is not required to watch the walk in front of her at all times.

Error was also assigned against the court's oral statement to the jury that it was up to the jury to determine whether the facts, as supported by the evidence, substantially stated the facts included in the hypothetical questions. The court further instructed the jury orally that the jury was to determine whether or not the facts were in evidence to sustain the facts stated in the hypothetical questions.

It is the position of appellants that it is the function of the court to determine whether or not there are facts in evidence or facts of record to support the hypothetical questions. Once this determination has been made, the jury weighs and determines those facts and their application. While the court's choice and use of words in this connection might be considered inapt, yet under the facts and circumstances of this case, it does not clearly appear to have resulted in prejudicial error. Inasmuch as a new trial must be granted, no doubt this language will not recur.

The final argument of appellants was directed against the testimony and exhibits concerning the experiment made by the plaintiff's witnesses just before the last day of the trial. It was admitted that the accident happened in December 1964, while the experiment was conducted on a bright day in May 1965. There was no testimony that the condition of the marquee was substantially the same on both occasions. Certainly the weather conditions were radically different.

One of plaintiff's experts testified that the snow striking the top of the marquee would melt and turn to water quite rapidly. It would go down the drain in a matter of hours. The other expert stated the snow on the marquee would melt at the rate of 7.8 gallons per hour. At this rate of flow it would require about 38 minutes to discharge 5 gallons of water down the drainpipe. Nevertheless, he testified that in the experiment he first poured 1 gallon down the drainpipe and took a picture of its spread on the sidewalk. Then he poured 4 gallons down at one time and again took a picture of its spread upon the sidewalk. These pictures, thus taken,

were to demonstrate to the jury that the water from the drain would spread, fanlike, across the pavement where the plaintiff fell. However, pictures taken by plaintiff during a rainstorm show a much narrower spread of water below the drainpipe. During the argument to withdraw and exclude this testimony and these exhibits the trial court expressed serious doubts as to its admissibility. Nevertheless, the court allowed it and the exhibits to remain.

█ The general rule pertaining to experiments is laid down in C. McCormick, Evidence § 169 at 360 (1954):

> Usually the best gauge of the probative value of experiments is the extent to which the conditions of the experiment were identical with or similar to those obtaining in respect to the litigated happening. Accordingly, counsel in planning experiments must seek to make the conditions as nearly identical as may be, and in presenting the evidence he must be prepared to lay the foundation by preliminary proof of similarity of conditions. (Footnotes omitted.)

This court in *Sewell v. MacRae*, 52 Wn.2d 103, 106-07, 323 P.2d 236 (1958), laid down the following rules:

> The trial court, in the exercise of its discretion regarding the *admissibility* of experiments as evidence, is governed by the following general rules: (1) The results of experiments are inadmissible, where the experiment is *inconclusive* or raises a number of collateral issues. 32 C.J.S. 440, § 587. (2) All of the conditions of the experiment must be conceded to be substantially similar. *State v. McMurray*, 47 Wn. (2d) 128, 286 P. (2d) 684 (1955). (3) Experiments are admissible when they afford evidence which is more satisfactory or reliable than oral testimony. 20 Am. Jur. 627, § 755. The ultimate test for the admissibility of an experiment as evidence is whether it tends to enlighten the jury and to enable them more intelligently to consider the issues presented. 32 C.J.S. 440 § 587.

In *Cowan v. Chicago, M., St. P. & P. R.R.*, 55 Wn.2d 615, 623, 349 P.2d 218 (1960), the court stated:

> We have said that evidence concerning such tests, as that now under discussion, should be admitted with care —and only when it appears that the conditions under which the test was made and all of the surrounding

circumstances are reasonably comparable to those with which the court is concerned,—"the test is supposed to be of assistance to the trier of the facts." (Citing case.)

In the case at bar the trial court expressed serious doubt before allowing the testimony and exhibits to remain before the jury. There was no similarity in time, in atmospheric conditions, or in any circumstance which would make the experiment comparable in any way. There was thus in law no foundation for the allowance of this testimony and the submission of these exhibits to the jury. This assignment of error was well founded and the admission of this proof was highly prejudicial. Consequently, the judgment must be reversed and appellants allowed a new trial. Costs will abide the outcome of further proceedings. It is so ordered.

FINLEY, C. J., WEAVER, ROSELLINI, and HALE, JJ., concur.

March 22, 1968. Petition for rehearing denied.