## John Leppla *vs.* Minnesota Tribune Company.

### June 25, 1886.

**Evidence—Privileged Communications—Husband and Wife.**—Gen. St. 1878, *c.* 73, § 10, provides that neither husband nor wife can, "during the marriage or afterward, be, without the consent of the other, examined as to *any communication* made by one to the other during the marriage." *Held,* that this includes all private conversations between husband and wife, though on subjects which are not confidential in their nature.

New trial granted for error in admitting irrelevant and incompetent evidence.

Libel. Appeal by plaintiff from an order of the district court for Hennepin County, *Lochren,* J., presiding, refusing a new trial, after a verdict for plaintiff for one cent damages.

*Thomas Canty,* for appellant.

*Cross, Hicks & Carleton,* for respondent.

Mitchell, J. The libel was that "Mrs. John Leppla [plaintiff's wife] says that she is living in mortal fear that her husband [the plaintiff] will carry out his threats, and take her life. The unhappy couple are not living together, and the woman [plaintiff's wife] says that he [plaintiff] has made frequent and emphatic threats that he would kill her, if it cost him his life." The defendant justified.

Upon the trial defendant offered no evidence to prove either that plaintiff had made any threats, or that his wife ever said that he had; but having produced as a witness plaintiff's former wife, but who had been divorced from him, the defendant proved by her that she had been told by others that plaintiff had made such threats. That such evidence was entirely incompetent would seem too plain to require argument.

The defendant further proved by this witness that, during the marriage, plaintiff said to her that the wife of a man called "Billy the Kid" made $60 in one night, and asked her (the witness) why she did not get around there, "and get money out of them;" and that upon asking him (the plaintiff) whether she (the Kid's wife) got it by drinking with them, he replied: "What do you care how you get it, so you get money out of them;" to which she (the witness) replied that she thought too much of her children, and that if he ever intended to do anything of that kind he ought not to have any children in the world. All of this evidence was objected to by plaintiff as incompetent and immaterial, and because the witness was his wife at the time of these alleged communications.

The admission of this testimony was error for two reasons: *First,* the testimony itself was irrelevant to any issue in the case; and, *second,* the witness was incompetent to testify against the plaintiff without his consent as to communications made by one to the other during marriage. Gen. St. 1878, *c.* 73, § 10. The respondent contends that the statute only applies to communications of a confidential nature, and that those testified to were not of that kind. The language of the statute will not admit of such limitations. The word "communication" is used without qualification, and any such limitation as that suggested would be extremely difficult of application. It would introduce a separate issue in each case as to whether or not the communication was of a confidential character. To enable the court to judge as to its character, the communication would have to be disclosed, and so the very mischief committed which was designed to be prevented. There was formerly some question as to whether, at common law, the rule included communications between husband and wife which in their nature did not seem to be confidential, though

made in private conversation; but it was finally quite generally held that it included all conversations between husband and wife, though on subjects not confidential in their nature. *O'Connor* v. *Majoribanks,* 4 Man. & G. 435; *Dexter* v. *Booth,* 2 Allen, 559.

By using the word "communication" without qualification or limitation, in our statute, we think it was the intention to adopt this rule. *Dexter* v. *Booth, supra; Campbell* v. *Chace,* 12 R. I. 333; *Estate of Low,* Myr. Prob. Rep. (Cal.) 143. Whether any exception would be implied in a case where the communication, so far from being private or confidential, was, from its very nature, evidently intended to be communicated, and unless thus made public would be ineffectual to accomplish its purpose,—as where the husband gives the wife authority to act as his agent in the transaction of business, —we do not now stop to consider.

The error in admitting this evidence was obviously prejudicial to plaintiff. If the jury believed the witness, they would naturally infer that plaintiff had made to his wife the base suggestion to prostitute herself for gain.

Order reversed.