AMER REALTY CO. INC. *vs.* MAX SPACK & another.

Suffolk.    May 17, 1932. — June 30, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Equity Jurisdiction*, To set aside fraudulent conveyance. *Evidence*, Competency, Conversation between husband and wife. *Husband and Wife*. *Surety*.

An exception to the exclusion, by a master hearing a suit in equity, of testimony by a wife as to a conversation with her husband "in the presence of some of the children" properly was overruled where the record did not disclose and the defendants did not contend before this court that testimony was offered to establish the ages of the children or other circumstances from which the master would have been enabled to determine whether any one of the children, present when the alleged conversation was had, possessed sufficient intelligence to pay attention to the alleged conversation, if, in fact, any one of them heard it.

A master, hearing a suit in equity under c. 109A, added to the General Laws by St. 1924, c. 147, by a judgment creditor of a corporation against one, who was surety on a bond to dissolve an attachment made in the action wherein the judgment was entered, and his wife to set aside a conveyance by him to his wife on the ground that the conveyance was without consideration and made for the purpose of hindering, delaying and defrauding the plaintiff in collecting the

judgment, found in substance that the surety knew of a verdict against the corporation in that action; that after the verdict the action was reported to this court; that, while the action was pending here, the corporation filed a petition in bankruptcy; that four days thereafter the surety, knowing that the corporation was "broke," conveyed to his wife as a gift the real estate in question and withdrew practically all his money, amounting to about $14,000, from several banks and that nine months later the judgment was entered. *Held*, that it was reasonable for the master to infer and conclude that the conveyance of the real estate was made by the surety for the purpose and with the intent to hinder and delay the plaintiff in satisfying a judgment which, at the time of the conveyance, the surety had reason to believe the plaintiff would ultimately recover.

In the circumstances above described, the plaintiff was a creditor of the surety within the provisions of said c. 109A, § 1.

BILL IN EQUITY, filed in the Superior Court on February 27, 1931, and afterwards amended, described in the opinion.

A demurrer was heard by *Weed*, J., and an interlocutory decree was entered overruling it.

The suit then was referred to a master. Material facts found by the master are stated in the opinion.

At the time the bill was filed, a rescript had issued from this court ordering judgment on the verdict for the plaintiff in the action against The Eastern Tire and Rubber Co. Inc., previously rendered as described in the opinion, but judgment was not entered until April 21, 1931, which was after the bill was filed. The master stated those facts in his report.

After hearing by *Qua*, J., there were entered interlocutory decrees allowing an amendment to the bill setting up the entry of judgment against The Eastern Tire and Rubber Co. Inc., after the filing of the bill, overruling exceptions to the master's report and confirming the report; and a final decree granting the plaintiff the relief sought. The defendants appealed from all the decrees.

In this court, the defendants did not argue the appeal from the interlocutory decree allowing the amendment to the bill.

The case was submitted on briefs.

*H. C. Mamber*, for the defendants.

*H. Bergson & S. Bergson*, for the plaintiff.

PIERCE, J.   This is a bill in equity wherein the plaintiff, under the provisions of c. 109A added to the General Laws by St. 1924, c. 147, seeks to set aside a conveyance of real estate from the defendant Max Spack to his wife the defendant Rebecca Spack on the ground that the conveyance was without consideration and made for the purpose of hindering, delaying and defrauding the plaintiff in collecting a judgment.   The defendants demurred.   An interlocutory decree was entered overruling the demurrer, and the defendants appealed from the "order, dismissing the defendants' demurrer."   Upon the filing of the defendants' answer the case was referred to a master under an order "not to report the evidence . . . without special order of the court."   The record does not disclose that such an order was made.

The findings of the master in substance disclose that prior to February, 1929, the plaintiff brought an action against The Eastern Tire and Rubber Co. Inc., of which the defendant Max Spack was a director; that a special precept issued from the Superior Court under which an attachment of the goods of The Eastern Tire and Rubber Co. Inc. was made, and a keeper was put into its place of business; that The Eastern Tire and Rubber Co. Inc. for the purpose of dissolving this attachment gave a bond in the penal sum of $1,500 with two sureties, one of whom was Max Spack. The writ in the action against The Eastern Tire and Rubber Co. Inc. was dated December 20, 1928.   On November 22, 1929, the plaintiff recovered a verdict against The Eastern Tire and Rubber Co. Inc. in the sum of $562.50 and the case was reported to this court, where the verdict for the plaintiff was affirmed — see *Amer Realty Co. Inc.* v. *Eastern Tire & Rubber Co. Inc.* 274 Mass. 297 — and on April 21, 1931, judgment in the Superior Court was entered for the plaintiff in the sum of $639.71 damages and $71.30 costs of suit.   A petition in bankruptcy was filed on July 11, 1930, and on November 10, 1930, The Eastern Tire and Rubber Co. Inc. was adjudicated a bankrupt in the District Court of the United States for the District of Massachusetts.

At the time the defendant Max Spack qualified as surety on the bond referred to, he listed as part of his assets the home at 232 Washington Avenue, Chelsea. This property was assessed for $8,000 and was worth $14,000. On July 15, 1930, he conveyed the house above described to his wife. It is this conveyance which the plaintiff seeks to set aside. The defendant Max Spack admitted that he knew in July, 1930, that The Eastern Tire and Rubber Co. Inc. was "broke." When he made the conveyance he had on deposit in five banks "some" $14,000. At about the same time he made this conveyance to his wife he withdrew the moneys from the different banks, leaving in two of them about $100 for a small checking account balance. On July 12, 1930, there was a savings account in the Broadway National Bank of $3,500, which stood in the name of Max Spack, trustee for Rebecca Spack. She contended that the money belonged to her, and was a part of $3,900 which had been paid to her for injuries received in an accident. On July 12, 1930, her husband withdrew from that deposit $3,000. Respecting this deposit the master states: "I do not find that she had any claim against her husband for the sum of $3,900, or for approximately that sum." Max Spack testified "that the reason for withdrawing all his money was that he thought the banks might fail, and later that he needed to have cash with him in the business he intended to conduct in New York, Philadelphia, etc." The master found that "His explanation of why he made the conveyance to his wife and withdrew practically all his money from the banks at the same time was that he had lost a lot of money, business was bad, and he was going into another business and it would be a risk; his wife was afraid he would lose the home and the rest of his money and insisted that he transfer the house to her." The defendants admitted that the conveyance was a gift.

The master found that on July 15, 1930, the day of the conveyance, Max Spack was not insolvent, unless the conveyance of the realty and the withdrawal of the money from the banks and the concealment of it rendered him so.

He further found that Max Spack knew of the action by the Amer Realty Co. Inc. against The Eastern Tire and Rubber Co. Inc., knew that he was surety on the bond to discharge the attachment, and knew that a verdict had been awarded in favor of the plaintiff in that action in November, 1929. Presumably to rebut on the facts any inference of actual intent on the part of Max Spack or his wife to hinder, delay or defraud his creditors or any inference that Rebecca Spack participated in any such fraud, if contemplated by her husband, she was asked at the hearing before the master "whether or not there was some conversation between her and her husband in the presence of some of the children relative to the transfer of the house." "The evidence was offered solely for the purpose of showing the circumstances that led up to making a gift of the property." The conversation was excluded rightly. The record does not disclose, and the defendants do not contend in their brief, that testimony was offered to establish the ages of the children, or other circumstances from which the master would have been enabled to determine whether any one of the children, present when the alleged conversation was had, possessed sufficient intelligence to pay attention to the alleged conversation, if, in fact, any one of them heard it. *Freeman* v. *Freeman*, 238 Mass. 150. *Linnell* v. *Linnell*, 249 Mass. 51.

On the foregoing facts and the reasonable inference to be drawn therefrom we think that the master was fully warranted in finding that the property as described in the plaintiff's bill of complaint was conveyed by "the defendant Max Spack to his wife, the defendant Rebecca Spack, for the purpose and with the intent to hinder and delay the plaintiff in satisfying a judgment which, at the time of the conveyance, the defendant Max Spack had reason to believe the plaintiff would ultimately recover." This being a finding of actual intent to defraud by the defendant, the case is governed by G. L. c. 109A, § 7. We are of the further opinion that the plaintiff at the time of the conveyance was a creditor of the defendant as that relation is defined in G. L. c. 109A, § 1.

The interlocutory decree overruling the defendants' demurrer, the allowance of the motion to amend the bill of complaint, the interlocutory decree confirming the master's report, and the final decree are affirmed with costs.

*Ordered accordingly.*