62 Wn.2d 202 (1963)
381 P.2d 970
MOON MULLIN et al., Appellants,
v.
BUILDERS DEVELOPMENT & FINANCE SERVICE, INC., Defendant,
J.G. FAIRFAX et al., Respondents.[*]
No. 36424.
The Supreme Court of Washington, Department One.
May 23, 1963.
*203 Benson & McNair and Lee R. McNair, for appellants.
Skeel, McKelvy, Henke, Evenson & Uhlmann and Frederick V. Betts, for respondents.
HILL, J.
This is not just another rear-end collision case; it demonstrates that there can be such a collision without damages. A verdict was directed for the plaintiffs on the issue of liability; but on the issue of damages the jury found no damages sustained by the plaintiff-husband, no damages sustained by the plaintiff-wife, and no damages to their car or the contents thereof.
A motion for a new trial was denied; and a judgment entered on the verdict. From this judgment the plaintiffs appeal, asking for a new trial.
Concededly the defendant's car hit the rear end of the plaintiffs' car while the cars were traveling south on 5th Avenue between Pine and Pike Streets in Seattle at about 2:30 p.m.[1] The plaintiffs' car was stopped for a red light at Pike Street and was some 6 feet behind a pickup truck. The defendant described the contact by saying that he could have kicked the plaintiffs' car harder than he hit it. The plaintiffs gave a version of a violent impact; the plaintiff-husband estimated the defendant's speed at 50 miles an hour, but because the plaintiff had power brakes and snow tires his car was moved forward only 5 to 6 inches. He did not observe any physical damage to his car at that time; continued on his way to work; and after reaching his place of employment, his wife continued on with the car.
The damages sought for the plaintiff-husband were: $63,275 for injuries sustained, pain, suffering and anxiety; $899.84 for lost wages and $220 for help employed; $37,200 for the present value of his diminished earning capacity; and $2,246 for hospital and medical expenses incurred. The damages sought for the plaintiff-wife were: $11,750 for injuries sustained, pain, suffering and anxiety; and permanent damage in the sum of $5,450. On a third cause of action the plaintiffs sought $300 for the depreciation in *204 value of their car, and $20 for a crate of eggs demolished by the collision.
There was evidence upon which the jury might have returned a verdict of substantial damages for the plaintiffs; but the jury could also conclude that the contact between the two cars was very slight; that the testimony of the plaintiffs was not true; and that they were trying to parlay a minor contact between their car and that of the defendant into a bonanza.
The assignments of error relate to three claimed trial errors and a claim that the damages were so inadequate as to indicate passion and prejudice on the part of the jury.
The latter we will consider first. Apart from the testimony of the plaintiffs, which the jury apparently disbelieved practically in toto, there is no evidence which compels the conclusion that the claimed injuries resulted from the collision in question.
Considering, first, the claimed injuries of the plaintiff-husband, the plaintiff claimed both a diaphragmatic hernia and an epigastric hernia, as the result of the collision. None of the plaintiffs' doctors could testify that a diaphragmatic hernia was caused by the accident, and Dr. Smith testified that, in his opinion, it was not.
The plaintiff-husband was operated on for an epigastric hernia on June 2, 1960. Several doctors had examined the plaintiff-husband at various times after the collision, but no epigastric hernia was found until May 23, 1960. The only basis on which the doctor, who performed the June 2 operation, could fix the collision as the cause of the hernia was the history given by the patient of a violent impact.
The second epigastric hernia operation was on September 28, 1960, and the doctor who performed it said that it was an entirely new hernia in a different area and not a redoing of the previous hernia operation.
The plaintiff-wife saw a doctor for the first time 19 days after the collision. This doctor noticed that her teeth were defective and referred her to a dentist. And the only doctor she saw thereafter was Dr. Smith whom she first contacted some 6 months after the collision. Although he concluded *205 she was then suffering from a post-concussion syndrome, there was no objective evidence of injury to her, and the diagnosis was based on a case history of violent impact.
If the jury believed there had been no violent impact, there was no basis to tie the subsequent condition of either of the plaintiffs to the collision in question.
Nor is there testimony to corroborate the testimony of the plaintiffs relative to the damage to their car or to the crate of eggs.
[1] The trial court refused to grant a new trial because of the inadequacy of the damages; and this is a matter peculiarly within the discretion of the trial court. We will not reverse the refusal to grant a new trial on such ground except for a manifest abuse of discretion. Lipshay v. Barr (1959), 54 Wn. (2d) 257, 339 P. (2d) 471. We find no such abuse.
Two of the assignments relative to trial errors can be quickly disposed of; however, a third presents a question on which some detailed clarification seems desirable.
Error is assigned to the giving of instruction No. 5:
"I instruct you that should you find for the plaintiffs in this case, they are not entitled to recover for any physical ailments or disabilities which may have existed prior to the accident complained of in their complaint, if any, and they are not entitled to recover for any injuries or physical disabilities or ailments which they have been or may now be suffering from which were not caused or contributed to by reason of the accident complained of."
There is no contention that it is not a proper statement of the law, but that it is inapplicable in that it relates to both plaintiffs and that there was no evidence that the plaintiff-wife had sustained any prior injuries.
As we read the instruction, there is no reference to any prior injury. The first portion of the instruction which relates to what "existed prior to the accident complained of," is limited to "physical ailments or disabilities." The plaintiffs were, and now are, seeking to recover for claimed injuries and physical disabilities of the plaintiff-wife, and the issue was whether they were caused or contributed to by reason of the accident complained of.
*206 We see nothing in the instruction prejudicial to the plaintiff-wife; and an instruction of this tenor was required by the abundant evidence relating to disabilities and hospitalizations of the plaintiff-husband both before and after the collision.
The plaintiffs assign error to the trial court's refusal to permit the plaintiff-wife, when recalled at the end of the plaintiffs' case, to testify that the plaintiff-husband was (during the year prior to the collision with the defendant's car) in good health and that he had none of the complaints that he had after the collision. Her testimony would have been cumulative as the matter of his health and activities had been covered in considerable detail by her husband.
[2] The admissibility of cumulative evidence lies within the sound discretion of the trial court. Braack v. Bailey (1948), 32 Wn. (2d) 60, 63, 200 P. (2d) 525, 526; Girardi v. Union High School Dist No. 1 (1939), 200 Wash. 21, 26, 93 P. (2d) 298, 301. Here there was offered only a reiteration by an interested witness, i.e., a party to the action. The trial court did not abuse its discretion.
The last of the assignments relating to claimed trial errors, relates to the trial court's refusal to permit plaintiffs' counsel to cross-examine the defendant as to the nature of the crimes of which he had been convicted, for the purpose of affecting his credibility.
Defendant had admitted on cross-examination that he had been convicted of several crimes, but there was no statement as to the nature of the crimes. This testimony was admissible to affect his credibility under either of the statutes hereinafter discussed.
The plaintiffs were desirous of getting before the jury that one of the crimes of which the defendant had been convicted was rape. RCW 10.52.030 was cited to the court and a number of the cases construing it. This statute is hereafter quoted in full, but plaintiffs' reliance was on the portion of the statute that says the conviction of a crime by a witness may be proved "either by the record thereof, ... or by other competent evidence, or by his cross-examination." We have held that if the conviction may *207 be proved by the record thereof, it follows that the nature of the crime and the length of the sentence may be shown. State v. Steele (1929), 150 Wash. 466, 273 Pac. 742; State v. Nichols (1922), 121 Wash. 406, 209 Pac. 689. The trial judge took the position that the statute applied only in criminal cases and refused to permit any cross-examination as to the nature of the crimes.
RCW 10.52.030 was adopted in 1909 as part of a comprehensive criminal code covering criminal procedure and substantive criminal offenses. The title of the act was:
"An Act relating to crimes and punishments and the rights and custody of persons accused or convicted of crime, and repealing certain acts." Laws of 1909, chapter 249, p. 890.
[3] We now take the position that this statute has no application to a civil case, and that an act with such a title could not constitutionally amend or repeal its counterpart (RCW 5.60.040) applicable to civil actions.
While we find only two civil cases which have considered RCW 10.52.030, the criminal cases since 1909 citing RCW 5.60.040 are as numerous as those citing RCW 10.52.030. (Until the 1909 act became effective, RCW 5.60.040 was applicable to both civil and criminal cases by virtue of the provision in the criminal practice act that "Witnesses, competent to testify in civil cases, shall be competent in criminal prosecutions." (Laws of 1854, p. 117, presently RCW 10.52.020)) By reason of the confusion in our cases, it seems that some clarification is in order.
We cite the two statutes in parallel columns for the purpose of comparison:[2]

 RCW 5.60.040: "Conviction of RCW 10.52.030: "Convict as witness.
crime  Effect. No person offered Every person convicted of a crime shall
as a witness shall be excluded be a competent witness in any
from giving
*208 evidence by reason of conviction civil or criminal proceeding, but his
of crime, but such conviction may his conviction may be proved for the
be shown to affect his purpose of affecting the weight of his
credibility: Provided, That any testimony, either by the record
person who shall have been thereof, or a copy of such record duly
convicted of the crime of perjury authenticated by the legal custodian
shall not be a competent witness thereof, or by other competent
in any case, unless such evidence, or by his cross-examination,
conviction shall have been upon which he shall answer any proper
reversed, or unless he shall have question relevant to that inquiry, and
received a pardon." the party cross-examining shall not be
 concluded by his answer thereto."

History of RCW 5.60.040: As originally adopted in 1854, the section read:
"No person offered as a witness shall be excluded from giving evidence, by reason of conviction for crime, but such conviction may be shown to effect his credibility: Provided, That no person who shall have been convicted of the crime of perjury, shall be a competent witness in any case, unless such conviction shall have been reversed or unless he shall have received a pardon."
This was a part of our territorial civil practice act (Laws of 1854, p. 186 § 292). It was re-enacted in 1869 as § 385 (p. 103) of "An Act to Regulate the Practice and Proceedings in Civil Actions," and again in 1877 as § 392 (p. 86) of "An Act to Regulate the Practice and Proceedings in Civil Actions." It appeared in the Code of 1881 as § 390 (p. 102, in the section devoted to civil procedure). In the Laws of 1891, chapter 19 § 1, p. 33, under the title of "An Act in relation to evidence in actions and judicial proceedings, and amending sections 390, 393, 406, 407, 408, 423 and 425 of the Code of Washington of 1881," § 390 of the Code of 1881 was amended to read exactly as the present RCW 5.60.040.
Without following it through the various codes and compilations, it was § 1212 in Remington's Revised Statutes under the heading Title 9, Evidence, chapter 1, p. 368, "The *209 Competency of Witnesses," and is now carried in RCW under Title 5, Evidence, chapter 5.60 "Witnesses-Competency."
History of RCW 10.52.030: We have already referred to the fact that this section of our statute dates back to 1909, when it was adopted as part of a new criminal code taken largely from New York and Minnesota. Its chapter headings and 444 sections indicate how comprehensive it was in character.
Chapter 1, General Provisions (52 sections); chapter 2, Rights of Accused (12 sections); chapter 3, Crimes Against the Sovereignty of the State. Treason (3 sections); chapter 4, Crimes by or Against Public Officers. Bribery and Corruption (65 sections); chapter 5, Crimes Against the Person. Suicide (50 sections); chapter 6, Crimes Against Morality, Decency, etc. Rape, Abduction, Carnal Abuse, etc. (65 sections); chapter 7, Crimes Against Public Health and Safety (46 sections); chapter 8, Crimes Against the Public Peace (23 sections); chapter 9, Crimes Against Property. Crimes Against State Property (99 sections); chapter 10, Miscellaneous Crimes (29 sections).
RCW 10.52.030 has never been removed in any code or compilation of statutes from its place in context with other sections relating to procedure in criminal actions. In Remington's Revised Statutes it was § 2290 and was included in Title 14, Criminal Law, chapter 1, General Provisions. It is now carried in RCW in Title 10, Criminal Procedure, chapter 10.52, Witnesses-Generally.
From the history of RCW 5.60.040 and RCW 10.52.030 we are satisfied that despite the use of the word "civil" in RCW 10.52.030, it is clear that it was never intended to and could not constitutionally under the title of the act heretofore quoted, repeal RCW 5.60.040 or in any way affect the statutory rules applicable to witnesses in civil cases.
Plaintiffs say we have recognized the applicability of RCW 10.52.030 in two civil cases: In Lankford v. Tombari (1935), 35 Wn. (2d) 412, 213 P. (2d) 627, 19 A.L.R. (2d) 462, no mention was made of either of the statutes but we *210 cited two criminal cases where that statute did apply. In Rung v. Radke (1954), 44 Wn. (2d) 590, 269 P. (2d) 584, RCW 10.52.030 was cited to this court as controlling. We sua sponte called attention to RCW 5.60.040 and said that since both parties assumed that RCW 10.52.030 was applicable "we shall, for the purposes of this opinion, make the same assumption." By that statement, the court definitely limited its ruling to the opinion then before it.
[4] For the first time the issue of the ambit of these two statutes is squarely before us, and it is our hope that we have made it clear that RCW 10.52.030 is applicable to criminal cases only and that in construing RCW 5.60.040, which is applicable to civil cases, we are not bound by the cases construing RCW 10.52.030 relative to showing the character of the crime and the length of the sentence for the purpose of affecting credibility.
[5] The result is that the plaintiffs here have placed their reliance on an inapplicable statute and the cases construing it. Under RCW 5.60.040 it may be shown that a witness has been convicted of a crime or crimes to affect his credibility, but the extent to which the matter may be pursued thereafter rests in the sound discretion of the trial court having always in mind whether the peg of relevancy, if any, on the issue of credibility will be entirely obscured by the dirty linen hung upon it.
In State v. Gottfreedson (1901), 24 Wash. 398, 399, 64 Pac. 523 (the present RCW 5.60.040 being then applicable to criminal cases), the court pointed out that,
"... When it was shown that the defendant [who had testified] had been convicted of a crime, the demands of the statute had been met; for the purpose of the statute is only to affect the credibility of the witness, and not to prejudice the minds of the jury by parading before them ..."
other offenses. The Gottfreedson conviction was reversed because he was required to testify that the former conviction was for horse stealing (which was the same offense for which he was then on trial).
*211 [6] We find no abuse of discretion in the action of the trial court in refusing to permit the plaintiffs to show that the defendant had been convicted of rape. (By the same ruling the defendant was barred from showing that the plaintiff-husband had been convicted of assault with a deadly weapon.)
The judgment is affirmed.
OTT, C.J., ROSELLINI, HUNTER, and HALE, JJ., concur.
NOTES
[*] Reported in 381 P. (2d) 970.
[1] To anyone familiar with Seattle, the time and place connotes heavy traffic.
[2] Note these essential differences: Under RCW 5.60.040 there is no reference to how conviction of crime is to be shown. In RCW 10.52.030 three methods of proof are stated. Under RCW 5.60.040 one convicted of perjury is not a competent witness. RCW 10.52.030 makes no reference to perjury, so the convicted perjurer could testify; but as in the case of other crimes, his conviction of perjury could be shown.