**People of the State of Illinois, Plaintiff-Appellee, v. Edward Earl McNanna, Defendant-Appellant.**

Gen. No. 68–18.

Third District.

April 29, 1968.

Craig Armstrong, of Ottawa, for appellant.

Robert E. Richardson, State's Attorney, of Ottawa, for appellee.

ALLOY, P. J.

This cause is before us on a writ of error from a judgment of the Circuit Court of LaSalle County, as a result of a trial held in 1963, in which defendant was found guilty of the crime of arson in a jury-waived trial. At the trial defendant was represented by counsel appointed by the court. Proceedings recently initiated culminated in the Illinois Supreme Court which transferred the review proceedings for determination by this Court in February, 1968.

The record discloses that defendant, Edward Earl Mc-Nanna, and his wife had been arguing for many days and that defendant had begun a drinking spree at 10:00

a. m. on the morning of May 24, 1963. At approximately midnight that evening he encountered his wife at a place called the Hilltop Tavern. Defendant's wife was seated with defendant's sister at the time. Defendant then took a seat to the right side of his wife (his sister was seated on the left side of his wife) and defendant began an argument with his wife about her wedding rings. The sister of defendant, a Betty Marcin, testified she heard this portion of the conversation. In the trial of the cause defendant's wife was permitted to testify that she told defendant that her wedding rings were at home; that defendant then hit her and said that he "was going to burn everything I loved." The sister, Betty Marcin, who was seated next to defendant's wife, testified that she did not hear that portion of the conversation relating to the threat to burn nor did she see defendant strike his wife. The conversation and the threat, according to the testimony of the wife, were made within the sight and hearing of the sister, Betty Marcin. Defendant's wife testified that she then went from the tavern to the County Jail to swear out a warrant for defendant for assault and battery. While she was at the jail she saw a fire truck go by and then learned it was the house where she lived that was burning.

From the record, it was apparent that the fire which was set at defendant's apartment was set intentionally as there were three separate fires on the floor. One involved a pile of family pictures that had been burning, another was on the couch cushions, and another involved papers piled at the end of the parlor. A can of lighter fluid which was kept in a linen closet was near one of the three fires and the photographs which were on fire were family photographs which had been locked in the desk where defendant's wife had left them that evening. Defendant denied setting the fires and testified that he went to the home, had a cup of coffee and went on to another

tavern without noting any fire or anything unusual in the neighborhood.

The question for review which arises in the case is whether the admission of the testimony of the conversation between the defendant and his wife (through testimony of his wife) as to his threat to "burn everything I loved," was proper or whether it was confidential and, therefore, incompetent under the provisions of the 1963 Ill Rev Stats, c 38 § 155–1. The Statute under consideration provides specifically as follows:

> "In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during coverture, except in cases where either is charged with an offense against the person or property of the other or in case of wife abandonment or where the interest of their child or children are directly involved, or as to matters in which either has acted as agent of the other."

Both parties cite the case of People v. Palumbo, 5 Ill 2d 409, 125 NE2d 518, which is the leading case upon the subject, and both the People and the defendant contend that this case is authority for the position taken by the People (that the conversation was properly admitted into evidence) and by the defendant (that it was erroneous to permit such testimony). In People v. Palumbo, supra, a person named Martello went to the home of defendant and his wife to purchase narcotics. He had $5 in marked bills. Martello testified that defendant's wife admitted him into the kitchen and also that in the presence of both defendant and his wife he asked defendant's wife if she had any "stuff." The wife testified that her husband directed her to go into the bedroom and get the package of narcotics since she was closer to the bedroom. The wife then went into the bedroom, got the package lying

on the dresser and handed it to the defendant. She also testified that defendant handed the package to Martello and Martello gave defendant $5. Defendant stated that, although he was in the kitchen, he did not hear the conversation between Martello and his wife or know what occurred between them. On appeal, an issue was the admissibility of evidence of the conversation which followed between defendant's wife and defendant (as related by defendant's wife).

The Supreme Court in the Palumbo case referred to, in analyzing the statute and the effect of the Act, stated (at Page 412):

> "Determination of this issue requires an analysis of the statute in question against the background of the common law and earlier statutory provisions. With limited exceptions not here pertinent, husband and wife were incompetent to testify for or against each other at common law. The disqualification was rested in part upon their interest, in part upon the common-law notion of unity of husband and wife, and in part upon a desire to promote domestic tranquility. (I Blackstone, p 443; II Wigmore, Evidence, sec 601 (2d ed).) At the same time there existed in all actions a privilege which protected confidential communications made between husband and wife during coverture. VIII Wigmore, Evidence, secs 2332–2335 (3d ed)."

The court then pointed out that in the State of Illinois, this matter had been governed by the Evidence Act and that section 5 provided that nothing in section 1 of the Act should render the husband or wife competent to testify against the other as to any transactions or conversations occurring during the marriage except in certain specifically enumerated instances. The court also pointed out that in Funk v. United States, 290 US 371, decided in 1933, the United States Supreme Court appraised the

basis for the common-law rule of disqualification of husbands and wives in the light of experience and of present conditions, and concluded that the disqualification could not "be any longer justified, if it ever was justified, on any ground of policy." The court in the Palumbo case (at Page 414) pointed out that the legislature responded promptly to the suggestion made in People v. Kendall, 357 Ill 448, 456, 192 NE 378, and amended section 5 of the Evidence Act, and in 1937 it amended section 6 of Division XIII of the Criminal Code so that the language of the present Act referred to became effective.

The court in the Palumbo case then concluded that read against the historical background, it is clear that the statutory changes were intended to eliminate the common-law disqualification of husband and wife, and that in order for a spouse to claim a privilege or prevent the conversation from being admitted in evidence, it must in fact be "confidential." The court asserted that when made in the presence of a third party, such communications are usually regarded as not privileged because not made in confidence. The Supreme Court stated in the Palumbo case that since Martello was in the kitchen when the conversation between defendant and his wife took place, the conversation was not confidential and evidence of the conversation was admissible. The court further stated (at Page 415):

> "Statutory expressions of the common-law privilege similarly stated in terms of 'any communication,' have frequently been construed to include only the common-law privilege covering confidential communications."

Applying the principles reviewed in the Palumbo case, the statement by defendant to his wife made in the Hilltop Tavern regarding his intention to "burn everything I loved" was not confidential within the meaning of the section of the Act referred to in this opinion. The con-

versation took place in a public establishment at a table where the wife was seated in the middle, and defendant's sister was seated to her other side. Defendant's sister stated she heard the portion of the conversation which involved a dispute over wedding rings. She stated she did not hear the portion of the conversation referring to any burning. The fact that she heard part of the conversation demonstrated that defendant did not intend this conversation to be a confidential communication between himself and his wife. Taking the circumstance under which the conversation took place in a public tavern and after defendant had admittedly been drinking for over 14 hours, on the record it appears that the conversation between defendant and his wife was not intended as a confidential conversation.

Defendant cites the case of People v. Bartell, 386 Ill 483, 54 NE2d 700, as a precedent in the instant case. In that case involving a conviction for manslaughter of a two-year-old daughter, the wife was permitted to testify as to conversations between herself and her husband concerning the fatherhood of the child when no other person was present. Such statement was clearly intended as a confidential communication between husband and wife and was therefore privileged within the Statute. Since the conversation in the instant case was not made in the sole presence of the wife, we conclude that it was not a confidential communication and, therefore, that the conversation was properly admitted under the precedent of People v. Palumbo, supra.

Since we find no reversible error in the record, the judgment of the Circuit Court of LaSalle County will, therefore, be affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.