[No. 1256-1.    Division One—Panel 1.    April 16, 1973.]

KURT BREIMON, *Respondent,* v. GENERAL MOTORS CORPO-
RATION, *Appellant.*

Horowitz, C.J., concurs by separate opinion.

*Elvidge, Veblen, Tewell, Bergmann & Taylor, Duane Tewell, Richard J. Thorpe,* and *Thomas A. St. Pierre (Ross L. Malone,* of counsel), for appellant.

*Davies, Pearson, Anderson, Gadbow & Hayes, P.S.,* and *Alvin A. Anderson,* for respondent.

CALLOW, J.—This is a products liability action, but the issues raised are evidentiary. Error is assigned to the suppression of the testimony of the plaintiff's former wife, the exclusion of evidence of the plaintiff's driving record, the admission of evidence of a comparable happening, the allowance of the demonstration of an experiment by expert witnesses, the alleged misconduct of counsel in introducing evidence of a subsequent design change, and the supposed unfairness in the opportunities for discovery given to the respective parties.

Kurt Breimon suffered permanent paraplegia on March

8, 1967, when his 1967 Pontiac left the road in North Dakota and he was thrown out. He had purchased the automobile in Vancouver, Washington, in 1966. After the purchase, he received written advice from the manufacturer that the steering shaft might have been improperly installed, and he was instructed to contact a Pontiac dealer for repair of the steering. The car was taken to a Pontiac dealer in North Dakota where it was serviced in January 1967, and the accident occurred 6 weeks later. The plaintiff claimed that the automobile manufacturer was responsible for his injuries because of breach of warranty and because of negligence in the design and construction of the steering mechanism. A $350,000 jury verdict was returned in his favor.

MARITAL PRIVILEGE—CONFIDENTIAL COMMUNICATIONS

The plaintiff testified that just as the car began to slide on frost on the road the steering wheel caught and he could not steer out of the skid to prevent the crash. His former wife was called to testify to a conversation with her then husband which she said occurred in a hospital after the accident. In the offer of proof made in the absence of the jury, she stated that Mr. Breimon told her, in the presence of others and the plaintiff's now deceased grandfather, that he *thought* he turned to spit out the car window, hit some ice and went off the road. Defense counsel further offered her negative testimony that Mr. Breimon never reported to her a "catch" in the steering. She was not permitted to testify to the jury.

RCW 5.60.060 (1) reads:

(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor to a criminal action or proceeding

for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian.

The purpose of the statute is to engender a free flow of communication between a husband and wife so the relationship will be without reservation, open, trusting, confident and free of fear of disclosure, come what may. 8 J. Wigmore, *Evidence* §§ 2332, 2336, 2340 (J. McNaughton rev. ed. 1961).

■ Trust would be dispelled if a spouse was required to analyze each statement as to whether it might later be, as defendant argues, a "socially desirable objective" to disclose the confidential communication. *State v. Thorne,* 43 Wn.2d 47, 55, 260 P.2d 331 (1953), said:

the privilege against having the husband or wife testify as to confidential communications between the two, . . . endeavors to encourage between husband and wife that free interchange of confidences that is necessary for mutual understanding and trust. . . . the greatest benefits will flow from the relationship only if the spouse who confides in the other can do so without the fear that at some later time what has been said will rise up to haunt the speaker.

Marital communications are presumptively confidential. *Blau v. United States,* 340 U.S. 332, 95 L. Ed. 306, 71 S. Ct. 301 (1951). The confidence between the parties embraces all knowledge communicated to a spouse because of the relationship. *State v. Americk,* 42 Wn.2d 504, 256 P.2d 278 (1953); *State v. Robbins,* 35 Wn.2d 389, 213 P.2d 310 (1950). Divorce does not allow the spouse to whom the confidential communication was made to release it. *State v. Thorne, supra* at 56; 8 J. Wigmore, *Evidence* § 2341 (J. McNaughton rev. ed. 1961). A spouse should not be placed in fear that a future change in marital status would find his innermost secrets broadcast. *State v. Snyder,* 84 Wash. 485, 147 P. 38 (1915).

■■ Third persons may testify to conversations between spouses that were overheard. *Wolfle v. United States,* 291 U.S. 7, 78 L. Ed. 617, 54 S. Ct. 279 (1934); *State*

*v. Barnhart,* 73 Wn.2d 936, 442 P.2d 959 (1968); *State v. Slater,* 36 Wn.2d 357, 218 P.2d 329 (1950). The recent cases in our state and Professor Wigmore contemplate that the communication, not confidential because overheard by a third party, *could only be related by the third party. State v. Barnhart, supra; State v. Thorne, supra;* 8 J. Wigmore, *Evidence* § 2339 (J. McNaughton rev. ed. 1961). The statutory language supports this interpretation. While, on the one hand, a statute creating a privilege, being in derogation of common law should be strictly construed (*Randa v. Bear,* 50 Wn.2d 415, 312 P.2d 640 (1957)) yet, on the other, it should be construed so as to further its purpose. *In re Estate of McLaughlin,* 4 Wash. 570, 30 P. 651 (1892); Pound, *Common Law and Legislation,* 21 Harv. L. Rev. 383 (1908); Stone, *The Common Law in the United States,* 50 Harv. L. Rev. 4 (1936). Reason also indicates that successful communications may not be disclosed and that only the overhearing third person may testify as to the failure to successfully communicate with confidentiality. It is the third person who *knows* what was not kept confidential successfully; it is the third person who would be free normally of antipathies; and it is the third person who would be unbiased and objective most probably.

It is acknowledged that courts at times in contests between the spouses or in criminal actions have found a lack of confidentiality in certain communications without requiring the overhearing third person to establish admissibility. *See Picciurro v. United States,* 250 F.2d 585 (8th Cir. 1958); *Swearingen v. Vik,* 51 Wn.2d 843, 322 P.2d 876 (1958); 97 C.J.S. *Witnesses* § 271 (1957); Annot., 63 A.L.R. 107 (1929). Overriding considerations are not present in the instant situation however.

The position of the defendant is that since the ex-wife would testify that others were present, and she believed the dead grandfather heard the communication, that it was not confidential. The hearing spouse should not have the right to reveal the communication by testifying that others

were present and thereby preempt the speaking spouse of his right to claim or waive the privilege. This would permit admissibility by the bootstrap testimony of the former spouse. Thereby the threat of revelation would be resurrected and repose in the heart of the spouse who wishes to trust but does not desire events to prove him gullible, would be dispelled. *See State v. Kephart,* 56 Wash. 561, 106 P. 165 (1910). To permit the hearing spouse to establish admissibility by declaring a third person was present would also as *State v. Clark,* 26 Wn.2d 160, 168, 173 P.2d 189 (1946), remarked in discussing the sister subject of marital privilege, permit testimony to "enter through the back door which the statute forbids to enter through the front door." *State v. Winnett,* 48 Wash. 93, 92 P. 904 (1907). To enable the court to judge admissibility on the sole testimony of the hearing spouse, the communication would need to be disclosed so that the mischief intended to be guarded against would be committed in the process of ascertaining whether the communication was indeed confidential in character. Exclusion may be inexpedient; but unless such testimony is excluded, a qualification is added to the statute which undermines the public policy of encouraging openness in a marriage. A confidentiality limited by permitting the confidant to establish its admissibility is no confidentiality at all. The testimony was properly excluded.

### ADMISSIBILITY OF PRIOR DRIVING CONDUCT
### OF PARTY-PLAINTIFF

The defense was precluded from introducing testimony by the plaintiff's former wife that, "He always was a fast driver." "And he always drove that way, dangerously."

■ A statement was made by the plaintiff claiming that he never drove fast. The defendant acknowledges this statement was made in a deposition introduced by the defendant at the trial. The defendant, therefore, claims error in the situation it created. The trial judge had discretion to refuse the requested rebuttal by the defendant of the mat-

ter raised by the defendant. *Mullin v. Builders Dev. & Fin. Serv., Inc.,* 62 Wn.2d 202, 381 P.2d 970 (1963); *Gillett v. Lydon,* 40 Wn.2d 915, 246 P.2d 1104 (1952).

The defense states it wishes to introduce this testimony to (a) contradict the plaintiff's testimony, (b) show that the speed at which the plaintiff drove was a proximate cause of the accident, and (c) show that the plaintiff assumed the risk of driving a car he knew to be defective on an icy road at high speed. The evidence of the plaintiff's bad driving habits was excluded appropriately because it was proffered to infer that the cause of the instant accident was the recklessness or speed of the plaintiff at the time in issue. It was not relevant to that issue, and the danger of prejudice, consumption of time and distraction outweighed its questionable probative value. C. McCormick, *Evidence* § 200 (E. Cleary 2d ed. 1972). Evidence of a previous habit of speed is not admissible to prove conduct at a later time. An inquiry of this nature would raise a collateral issue that would divert the investigation from the quest of causation in the particular accident. The invitation to a protracted contest over whether the plaintiff previously was culpable or not, properly was cut off. *Chilberg v. Parsons,* 109 Wash. 90, 186 P. 272 (1919); *Meyers v. Meyers,* 5 Wn. App. 829, 491 P.2d 253 (1971); *Osborn v. Lake Wash. School Dist. 414,* 1 Wn. App. 534, 462 P.2d 966 (1969); Comment, *Competency of Proof of "Customary" Negligence in Support of Charge of Specific Act of Negligence,* 12 Wash. L. Rev. 35 (1937).

A comparison of *Bown v. Tacoma,* 175 Wash. 414, 27 P.2d 711 (1933), with these cases will illustrate the wisdom of allowing the trial judge's discretionary evaluation of the evidence to stand. In his evaluation regarding admissibility, the trial judge should consider the regularity of acts to establish a habit and the similarity of circumstances in light of whether the admission of the evidence will outweigh the danger of prejudice or confusion. C. McCormick, *Evidence* § 195 (E. Cleary 2d ed. 1972). He did not abuse the exercise of that discretion.

Previous convictions for reckless driving are inadmissible for purposes of impeachment or to prove a disposition towards negligence in a later unrelated civil action. The problem again is relevancy. The reasoning of *Lundberg v. Baumgartner,* 5 Wn.2d 619, 106 P.2d 566 (1940), indicates that testimony concerning prior convictions as well as prior arrests for poor driving cannot be used to indicate the convicted person's actions at the time of a later accident. The prior convictions for improper driving do not impeach his veracity or show him to be unworthy of belief. A previous act of misconduct should not be admitted in a civil action to impeach a witness. *Billington v. Schaal,* 42 Wn.2d 878, 884, 259 P.2d 634 (1953). The purpose of introduction of such testimony is to impugn the plaintiff and discredit him in the eyes of the jury, a use the trial judge rightly held to be unfair. An excellent discussion is found in *Nesbit v. Cumberland Contracting Co.,* 196 Md. 36, 75 A.2d 339, 20 A.L.R.2d 1212 (1950), which said that in civil cases involving negligence, the only relevancy of prior traffic violations would be to show a negligent character and chronic recklessness but held such a showing would wrongfully influence a jury as to specific conduct of a party and would be improper to prove negligence at a later particular time. The argument was made in *Nesbit* that the evidence of prior convictions should be admissible to contradict the statements that the party " 'considered' himself a 'good driver' ". The court found the attempted contradiction to be an attempt to show that because of previous recklessness there was recklessness at the time of the accident and forbid the attempt. *See also Dermody v. Fanning,* 153 Ore. 392, 56 P.2d 1150 (1936).

The ex-wife was also forbidden from testifying about a prior accident in which the plaintiff was involved. Evidence of a previous similar accident involving a party generally is inadmissible to show a lack of care by the same party as the cause of the accident in question. Such evidence is irrelevant concerning the cause of the instant acci-

dent since innumerable factors and causes present in the situation may not have been present previously and vice versa. *Turner v. Tacoma,* 72 Wn.2d 1029, 435 P.2d 927 (1967); *Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964); 29 Am Jur. 2d *Evidence* § 308 (1967); Annot., 20 A.L.R.2d 1210 (1951). The relevance of similar accidents to prove the likelihood that the cause of the accident in question was the same as the cause of the prior accident is within the discretion of the trial judge. *Blood v. Allied Stores Corp.,* 62 Wn.2d 187, 381 P.2d 742 (1963); *Alumbaugh v. Underwriting Members of Lloyd's, London,* 51 Wn.2d 331, 317 P.2d 1064 (1957). We do not find an abuse of discretion by the trial judge in excluding the evidence from that aspect.

ADMISSIBILITY OF EVIDENCE OF A COMPARABLE HAPPENING

A witness came upon the scene of the accident after it had occurred. His testimony that he had experienced skidding while driving before he came upon the scene was admitted. The defendant objects on the basis of lack of similarity of time, place, roads and altitude between plaintiff's and the witness' experience. The admission of the similar experience was within the discretion of the trial court after he has considered the extent of the similarity, the presence of modifying circumstances, and the absence or presence of the same essential conditions. *Alumbaugh v. Underwriting Members of Lloyd's, London, supra.* The dissimilarities were apparent to the jury and go to the weight rather than the admissibility.

ALLOWANCE OF A DEMONSTRATION BY EXPERT WITNESSES

Experiments were conducted involving the steering column in a 1967 Pontiac. The introduction of evidence of these tests was resisted with the claim that the conditions of the experiment were dissimilar to those which existed at the time and place of the accident.

Proof of the results of experiments should not be allowed where the experiment is inconclusive or raises a

number of collateral issues. However, if the conditions of an experiment are substantially similar to the actual happening and the experiment will afford more satisfactory or reliable evidence than oral testimony or will enable a jury to more intelligently consider the issues, then it should be permitted to be shown. *Quinn v. McPherson,* 73 Wn.2d 194, 201, 437 P.2d 393 (1968); *Sewell v. MacRae,* 52 Wn.2d 103, 323 P.2d 236 (1958). The experiment should be a fair representation of what occurred at the time in issue. *Gray v. Pistoresi,* 64 Wn.2d 106, 390 P.2d 697 (1964). The trial court must exercise its discretion in deciding whether substantially similar conditions prevail, and its decision will stand unless there has been an abuse prejudicial to the losing party. *Bichl v. Poinier,* 71 Wn.2d 492, 429 P.2d 228 (1967); *Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 393 P.2d 936 (1964).

Variations in conditions go to the weight to be given the testimony surrounding an experiment rather than to admissibility, and an experiment may be admitted to prove the theory of a party as to how an accident may have occurred as well as to prove how it actually occurred. Sufficient similarity is all that is required, not identical conditions. As was said in *Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 642, 453 P.2d 619 (1969):

> It was not the purpose of the tests to show how the accident happened, but to show how it could have happened. This was also the purpose of the tests performed by the plaintiff's expert. Such evidence is competent and relevant. Any dissimilarity between the conditions under which a test of this kind is performed and those existing at the time of the accident goes to the weight of the evidence and is a matter to be evaluated by the jury. [Citation omitted.] Furthermore, any objection to this type of evidence which the plaintiff might have had was waived when he introduced evidence of his own tests.

There was sufficient similarity in conditions to make the experiment admissible and differences were admissible to prove a contention or theory of the plaintiff as to how the accident could have occurred.

## ALLEGED MISCONDUCT OF COUNSEL IN INTRODUCING
## EVIDENCE OF A SUBSEQUENT DESIGN CHANGE

The trial court orally ruled that plaintiff's counsel could inquire of an expert as to the feasibility of a particular change made in the steering gear and how a misalignment could have been corrected, but that he could not inquire to elicit evidence of initial error. Defendant claims the plaintiff violated the ruling by so questioning in the forbidden area that the subsequent change could be used as evidence of initial negligence in the design.

Changes to an instrumentality after an accident may be introduced to show, *inter alia,* the feasibility of making the change. *Brown v. Quick Mix Co.,* 75 Wn.2d 833, 454 P.2d 205 (1969); *Peterson v. King County,* 41 Wn.2d 907, 252 P.2d 797 (1953).

We find the testimony on this subject did not stray from the limits of the imposed constraint into patent impropriety. *Brown v. Quick Mix Co., supra.* The objection is made that the questioning was carried on for too long, but the objection was not raised until the questioning went on to other subject matter. Counsel could have interrupted the questioning and asked to be heard in the absence of the jury but did not. The content of the inquiry and not its length is the issue. The content did not go beyond the scope of the feasibility exception. *Reil v. State,* 4 Wn. App. 976, 484 P.2d 1150 (1971). Further, an instruction to which defendant would have been entitled limiting or defining the extent to which this evidence could be applied was not requested. Under the circumstances, there was no prejudicial error. *Brown v. Quick Mix Co., supra; Wheeler v. Portland-Tacoma Auto Freight Co.,* 167 Wash. 218, 9 P.2d 101 (1932).

## FAIRNESS OF DISCOVERY OPPORTUNITY

The defendant challenges supposed restrictions on its pretrial discovery claiming that the plaintiff was granted free rein while it was impeded. An order was entered which forbade the deposition of plaintiff's experts who

were not to be called at trial as to their opinions or written conclusions but allowed the deposition of the defendant's employees, the obtaining of their expert opinions, and the acquisition of copies of written conclusions of those employees. Error is claimed in allowing the plaintiff to discover the opinions of the defendant's expert employees but only allowing the defendant to discover the opinion of the retained experts of the plaintiff who would be called to testify at the time of trial.

Insofar as applicable to our discussion, Rule 26(b) provided until June 30, 1972, that a court need not order the production of any writing prepared by the agent of an adverse party in anticipation of litigation or in preparation for trial and "shall not order the production of inspection of any writing that reflects . . . the written conclusions of an expert." *See* 2 L. Orland, Wash. Prac. § 162 (3d ed. 1972). The revision of Rule 26(b) became effective July 1, 1972, and provides that the substance of the opinions to be given by experts intended to be called at trial may be required through interrogatories. The rule was changed by realization of the need for more extensive discovery in order to promote effective cross-examination and rebuttal, tempered by the need to prevent one party from having to prepare his adversary's case. *Kozar v. Chesapeake & O. Ry.,* 320 F. Supp. 335 (W.D. Mich. 1970). *See also United States v. Meyer,* 398 F.2d 66 (9th Cir. 1968). Expert opinions should be available to party opponents so long as one party is not allowed to misuse the other by acquiring expert assistance at the expense of the other. Where the expert deposed is an employee of the opposing party, undue expense is not imposed and efficient discovery can be obtained. Even prior to the liberalizing amendment of the rule, the trend of the cases interpreting the rule was to encompass the approach taken by the trial court. *Empire Scientific Corp. v. Pickering & Co.,* 44 F.R.D. 5 (E.D.N.Y. 1968), thus observed on page 6:

Although the traditional view has been that interrogatories which call for opinions, conclusions or contentions.

are improper, see, e.g., Textrol, Inc. v. D. C. Oviatt Co., 37 F.R.D. 27 (N.D. Ohio 1964); Nakken Patents Corp. v. Rabinowitz, 1 F.R.D. 90 (E.D.N.Y.1940), there is a noticeable trend toward permitting such interrogatories if the court is convinced that by requiring responses thereto the lawsuits could be expedited, the information obtained could lead to relevant evidence, the issues could be narrowed, unnecessary testimony and wasteful preparation could be avoided, or any other substantial purpose sanctioned by the discovery provisions of the Federal Rules could be served.

(Footnote omitted.) *Wilmington Country Club v. Horwath & Horwath,* 46 F.R.D. 65 (E.D. Pa. 1969), likewise held on page 66:

> The fact that plaintiff seeks what may be characterized as an opinion, moreover, is not fatal to this interrogatory. "* * * Nor is it necessarily improper to require conclusions or opinions. The Rules themselves do not preclude it, and to establish such a prohibitory principle would enthrone theoretical considerations of logical symmetry above the practical requirements of everyday litigation. Any denial of interrogatories which are calculated to lead to evidence or to narrow the issues would thwart the purpose of the Rules. 4 Moore, Federal Practice (2d ed.), § 33.17." Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163, 165 (E.D.Pa. 1962) (Judge Freedman).
> In Kendall v. United Air Lines, Inc., 9 F.R.D. 702, 703 (S.D.N.Y., 1949), it was held that:
> > "An interrogatory is not objectionable because it calls for an expert opinion, especially where the expert is an engineer in the regular employ of the defendant. * * *"
>
> . . .
> There is, of course, no significant difference between the propriety of questions on depositions as opposed to interrogatories.

*See also Moran v. Pittsburgh-Des Moines Steel Co.,* 6 F.R.D. 594, 596 (W.D. Pa. 1947).

The court did not abuse its discretion in allowing the plaintiff access to the employee's expert opinion. The court complied with the rule when it restricted the defend-

ant to the opinions of the experts the plaintiff intended to call at the time of trial.

There was no prejudicial error found in the assignments raised by the appellant; and, therefore, the assignment of error raised by the respondent need not be discussed.

The judgment is affirmed.

WILLIAMS, J., concurs.

HOROWITZ, C.J. (concurring specially)—I concur in the affirmance of the judgment below for the reasons stated in the majority opinion with one exception. In upholding the judgment, the opinion relies on a rule of witness disqualification whose soundness is at least open to question notwithstanding that there is an alternate rationale available upholding the trial court's rejection of the offered testimony here assigned as error.

The majority construes RCW 5.60.060(1) as impliedly forbidding an ex-wife from testifying to circumstances which show the nonconfidential character of a communication made to her during marriage by her then husband, which evidence if received would render admissible her testimony as to the communication made. No Washington case construing the statute prohibits her from so testifying. In other jurisdictions, such testimony would be admissible. Their courts permit a spouse to testify to the presence of a third person during the making of a communication from one spouse to the other and, accordingly, hold admissible the communication so made. It is not necessary that proof of the presence of the third person come only from that third person.[1] Furthermore, no requirement has been im-

---

[1] *Pereira v. United States,* 347 U.S. 1, 98 L. Ed. 435, 74 S. Ct. 358 (1954); *Picciurro v. United States,* 250 F.2d 585 (8th Cir. 1958); *People v. Palumbo,* 5 Ill. 2d 409, 125 N.E.2d 518 (1955); *People v. McNanna,* 94 Ill. App. 2d 314, 236 N.E.2d 767 (1968); *Linnell v. Linnell,* 249 Mass. 51, 143 N.E. 813 (1924); *Fay v. Guynon,* 131 Mass. 31 (1881); *Reed v. Reed,* 101 Mo. App. 176, 70 S.W. 505 (1902); *People v. Melski,* 10 N.Y.2d 78, 176 N.E.2d 81, 217 N.Y.S.2d 65 (1961); *Sessions v. Trevitt,* 39 Ohio St. 259 (1883); *McCague v. Miller,* 36 Ohio St. 595 (1881). In *Picciurro v. United States, supra,* the wife was permitted to testify to a

posed that to be admissible her testimony must be corroborated.[2]

It is said that we should not adopt a contrary view because it would impair the freedom of either spouse to communicate with the other. The impairment, it is argued, results from the fact that an ex-spouse, out of motives of jealousy or vengeance, may seek ways and means, even though improper, to disclose communications embarrassing to the communicating spouse. The reasoning described is reminiscent of the rationale, now practically obsolete, advanced to justify the disqualification of parties and interested persons from testifying in their own behalf. RCW 5.60.030; 2 J. Wigmore, *Evidence* § 575 at 674 (3d ed. 1940).

The Supreme Court had an opportunity to adopt the rationale discussed by following the literal language of RCW 5.60.060 (1) prohibiting an ex-spouse from testifying to "any communication made by one to the other during marriage." *See,* for example, *Leppla v. Minnesota Tribune Co.,* 35 Minn. 310, 29 N.W. 127 (1886); *Cook v. Grange,* 18 Ohio 526, 531 (1849). *See generally* 8 J. Wigmore, *Evidence* § 2336 (J. McNaughton rev. ed. 1961). Nevertheless, the court, in conformity with the common-law rule, held that "any communication" means only any confidential communication. *State v. Americk,* 42 Wn.2d 504, 256 P.2d 278 (1953); *State v. Snyder,* 84 Wash. 485, 147 P. 38 (1915);

---

conversation between her husband and herself that took place in the presence and hearing of a third party. The court said:

It is, however, argued that the proof of the presence of a third party must be made by testimony other than that of the spouse. The witness could, we think, testify to any fact that made her testimony competent and manifestly testimony may be given by either spouse as to the known presence, hearing or knowledge of the third person. 250 F.2d at 589. The fact that the third person who overheard the communication between the husband and wife is dead at the time of the trial does not change the rule. *People v. Ressler,* 17 N.Y.2d 174, 216 N.E.2d 582, 269 N.Y.S.2d 414 (1966); *Sessions v. Trevitt, supra; Morgan v. Bartlette,* 3 Ohio C. Dec. 431 (1888); *Rowley v. Rowley,* 144 Okla. 157, 290 P. 181 (1930).

[2]*E.g., Lyon v. Prouty,* 154 Mass. 488, 28 N.E. 908 (1891); *Reed v. Reed,* 101 Mo. App. 176, 70 S.W. 505 (1902).

*Sackman v. Thomas,* 24 Wash. 660, 64 P. 819 (1901). A like rule was adopted with respect to the statutory language "any communication" as between attorney and client. RCW 5.60.060(2). *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953); *In re Estate of Quick,* 161 Wash. 537, 297 P. 198 (1931). Accordingly, an attorney who testified to the presence of a third person when his client made a communication to the attorney was permitted to testify to the communication so made. *Ramsey v. Mading,* 36 Wn.2d 303, 217 P.2d 1041 (1950). Nor did the Supreme Court avail itself of an opportunity to prevent the impairment of the marital testimonial privilege when, applying the common-law rule, it held that an eavesdropper could testify to the communication. *State v. Barnhart,* 73 Wn.2d 936, 442 P.2d 959 (1968); *State v. Thorne,* 43 Wn.2d 47, 260 P.2d 331 (1953); *State v. Slater,* 36 Wn.2d 357, 218 P.2d 329 (1950).

In the search for the facts, we should be slow to impose an additional restriction on the admissibility of evidence when: such a restriction is not required by Washington case law; nor supported by the analogy of the admissibility of evidence in attorney-client relationships; is contrary to decisional law elsewhere; and the rationale now put forward to justify the additional restriction is one the Supreme Court could have used but did not use in holding, in the cases cited, that RCW 5.60.060 should be construed in the common-law sense.

There is another ground, however, which supports the ruling of the trial court excluding the ex-wife's proffered testimony. Whether an ex-wife's testimony offered to show the nonconfidential character of a communication is prima facie sufficient to render the testimony admissible is a preliminary question for the trial court. *Freeman v. Freeman,* 238 Mass. 150, 130 N.E. 220 (1921); *Lyon v. Prouty,* 154 Mass. 488, 28 N.E. 908 (1891); *Nash v. Fidelity-Phenix Fire Ins. Co.,* 106 W. Va. 672, 146 S.E. 726, 63 A.L.R. 101 (1929). Thus, the ex-wife's proffered testimony may be inadmissible because too conjectural to show that the communication was made, to the husband's knowledge, in the presence and

hearing of the third person. This rule has been applied, for example, when the third person is a child and there is no preliminary showing that the child possesses sufficient intelligence to understand the communication. *See Amer Realty Co. v. Spack,* 280 Mass. 96, 181 N.E. 753 (1932). In *Westerman v. Westerman,* 25 Ohio St. 500 (1874), the court stated that "[e]vidence to show the presence of such third person was for the court, and not for the jury". 25 Ohio St. at 507-08.

Communications between a husband and wife are presumptively confidential. Such a presumption must be overcome "by proof of facts showing that they were not intended to be private." *Pereira v. United States,* 347 U.S. 1, 6, 98 L. Ed. 435, 74 S. Ct. 358 (1954). A trial court, in making a preliminary determination whether proffered evidence is sufficient to overcome the presumption of confidentiality, has a right to consider whether the testimony before him is based merely upon conjecture. The witness testifying to a matter which is in the nature of a conclusion of fact "must not appear to lack adequate data as its basis of inference." 2 J. Wigmore, *Evidence* § 659 at 770 (3d ed. 1940). *See also* 5 R. Meisenholder, Wash. Prac. § 331 (1965); C. McCormick, *Evidence* § 10 (E. Cleary 2d ed. 1972). As McCormick states it at pages 21-22:

[W]hen a witness uses such expressions as "I think," "My impression is," or "In my opinion," this will be no ground of objection if it appears that he merely speaks from an inattentive observation, or an unsure memory, though it will if the expressions are found to mean that he speaks from conjecture or from hearsay.

The proffered evidence here is in question and answer form. It reads:

Q (By Mr. Anderson) Was there anybody else present when Kurt Breimon has said that he spit tobacco out the window and then had an accident?
A I know there was other people there. I believe his grandfather heard him say it.
Q He's now dead, is he?
A Yes.

The answer "I know there was other people there," unaccompanied by supporting data, does not necessarily show that the husband was aware of the presence of such people or that they were in such close proximity to the husband as to be within hearing of the communication, much less to have actually heard it.

The ex-wife's conclusionary testimony "I believe his grandfather heard him say it" was likewise unaccompanied by any statement or evidence of circumstances from which it could be determined objectively whether the grandfather was so positioned that the communication was within his hearing so that he actually heard it. Plaintiff's brief puts it well:

> Mr. Breimon's grandfather was a man of advanced age and now deceased . . . There is no testimony as to his proximity, attention, wakefulness, hearing capacity, or any other element that would establish a "family" as opposed to a purely inter-spousal conversation in his presence.

The court could have held that the ex-wife's testimony was inadmissible because based on conjecture.

It is true that the reason given by the trial judge for refusing the offer of proof was unrelated to the conjectural quality of the testimony offered. Nevertheless, if there is a reason supported by the record that enables an appellate court to uphold the trial court's judgment, the judgment will be affirmed. The appeal is from the judgment, not from the reason given for a ruling assigned as error. *State v. Carroll*, 81 Wn.2d 95, 500 P.2d 115 (1972).